**In re Joseph Delma RACCA, Debtor.**

**Bankruptcy No. 483–00312–LC.**

United States Bankruptcy Court,
W.D. Louisiana.

April 19, 1984.

Phillip W. St. Romain, Lake Charles, La., for debtor.

Ronald J. Bertrand, Lake Charles, La., for trustee.

William G. McClanahan, trustee of debtor's Estate.

Wendell R. Miller, Jennings, La., for Production Credit Ass'n.

L. Donald Foreman, Lake Charles, La., for O'Brien Flying Service, Inc., creditor.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

### Procedural Development of Case

On September 11, 1983 the debtor in this Chapter 7 case, Joseph Delma Racca, filed a petition to amend Schedule B-4 of his original petition, filed April 11, 1983. The debtor seeks by his "petition to amend", to claim certain additional property, not listed in his original Schedule B-4 as exempt. The trustee has filed an objection to the amendment, the basis of which is, in part, that the amendment is untimely in that it fails to comply with the provisions of Rule 1007(c). It is the trustee's position that Rule 1007(c) would require that the debtor first obtain an order of court extending the time for filing the necessary schedules and pleadings once the fifteen (15) day deadline contained therein has passed. Additionally, a creditor, O'Brien Flying Service, Inc., has filed an objection to the amended Schedule B-4. The hearing instanta was provoked by the debtor's motion to have the trustee ruled into court to show cause why the debtor's amended Schedule B-4 should not be allowed to stand. Subsequently these matters and issues were joined and a hearing was held before this court on November 9, 1983. This first hearing did not result in a final determination and instead the matter was continued until December 1, 1983 in order to allow the debtor time to prepare and to file a proper accounting of certain contested issues which surfaced during the hearing. On December 1, 1983 a second hearing was held before this court at which time the respective parties presented additional evidence, testimony and argument. The matter was then submitted for determination and was taken under advisement.

After having reviewed the matter in its entirety and after having engaged in a good deal of research as to the legal issues herein presented, it is the considered determination of this court that the debtor's claim to additional exemptions will not be allowed for reasons as set out more specifically below.

### Findings of Fact

What surfaces from the testimony and evidence is that for some time prior to filing his petition for Chapter 7 relief, the debtor, Mr. Racca, was engaged in rather substantial farming operations. Indeed he does not dispute, that at least until the early part of 1982, he earned his living as a farmer. However, at some point during 1982, for reasons not here at issue, the farming operations began to flounder and his crop for that year was ultimately seized by certain of his creditors.

Also, not contested, is the fact that prior to going out of the farming business, Mr. Racca was the title-record owner of a certain sixty-foot boat, registration number 8608-A7, which boat forms the subject matter of the present controversy. The objectors have throughout these proceedings referred to this boat, (which Mr. Racca now asserts is an exempt 'tool of his trade'), as a 'pleasure boat' or a 'house-

boat'; and in fact the debtor does not dispute that such was the boat's original function and purpose. Mr. Racca, however, contends that when it became apparent that he would no longer be able to earn his living as a farmer, he at that time proceeded to have the subject boat fitted with the necessary equipment which would allow him to utilize it for purposes of commercial shrimping. It was further his testimony that for at least several months prior to filing for bankruptcy, he was in fact engaged in the business of commercial shrimping. Thus, it is Mr. Racca's contention that his 'houseboat' is no longer a 'houseboat' but is instead a commercial shrimping vessel, which should be exempted as a 'tool of his trade'.

As to why he did not originally list the boat as an exempt asset, Mr. Racca gives, by way of explanation, the following: The boat, at the time of filing, was encumbered with a chattel mortgage in favor of Mr. T.R. Miller, (debtor's nephew), and that the mortgage equaled or exceeded any equity the debtor otherwise had in this asset. The trustee however has since set aside the above-described chattel mortgage due to the fact that it was never properly recorded thus constituting an unperfected security interest defeasible in bankruptcy which the trustee now seeks to preserve for the benefit of the estate, *11 U.S.C.A. §§ 544, 551.* As the court appreciates the debtor's present position he contends that since the boat is now freed of the encumbrance and since he uses the boat to earn a living, he should now be allowed to exempt this asset as a 'tool of his trade' *11 U.S.C.A. § 522; LSA R.S. 13:3881.*

The objectors for their part contend variously and alternatively that: (1) The boat was and remains a houseboat or pleasure craft and as such does not qualify as an exempt 'tool of the trade'. (2) The debtor at no time engaged in the business of com-

mercial shrimping as a serious 'for profit' enterprise. (3) Even if the debtor had at one time engaged in commercial shrimping, he was nevertheless not doing so at the time of filing nor does he have any serious or realistic intent to resume those activities in the future. And (4), procedurally, the petition to amend comes too late and if allowed will prejudice the estate.

### Discussion and Conclusions of Law

As a threshold observation the court notes that the Code provides that under certain defined circumstances the debtor will be allowed to claim his exemptions on property recovered by the trustee.

Specifically *11 U.S.C.A. § 522(g)* provides as follows:

(g) Notwithstanding sections 550 and 551 of this title [11 USCS §§ 550 and 551], the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title [11 USCS § 510(c)(2), 542, 543, 550, 551, or 553], to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

A careful perusal of the above provision reveals that in addition to many other conditions, the debtor's ability to utilize *522(g)* is contingent upon his ability to qualify for the exemption under the provisions of *522(b).* That section in turn contains a provision for what has come to be known as "state opt out" *522(b)(1).* [1] The Louisi-

---

**1.** *11 U.S.C. § 522(b)*

Notwithstanding section 541 of this title [11 USCS § 541], an individual debtor may exempt from property of the estate either—(1) property that is specified under subsection (d) of this section, unless the State law that is

applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable

ana Legislature has chosen to take advantage of the 'opt-out' provision, by providing the state's own exemption statute and pro-hibiting the use of the exemptions provided in *11 U.S.C.A. § 522(d), LSA R.S. 13:3881(B).*[2] The net result of this rather

on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

**2.** *L.S.A. R.S. 13:3881*

General exemptions from seizure.

A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever:

(1) Seventy-five percent of his disposable earnings for any week, but in no case shall this exemption be less than an amount in disposable earnings which is equal to thirty times the federal minimum hourly wage in effect at the time the earnings are payable or a multiple or fraction thereof, according to whether the employee's pay period is greater or less than one week. However, the exemption from disposable earnings for the payment of a current or past due support obligation, or both, for a child or children, or for a spouse, or former spouse, if the Department of Health and Human Resources is providing support enforcement services to the spouse, is fifty percent of disposable earnings. The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(2) That property necessary to the exercise of a trade, calling, or profession by which he earns his livelihood, which shall be limited to the following:

(a) Tools.

(b) Instruments.

(c) Books.

(d) One pickup truck with a gross weight of less than three tons, or one motor vehicle, which does not possess any of the characteristics of a luxury automobile as defined under R.S. 39:365(B) which also shall not be a vehicle used solely for transportation to and from the place at which the debtor earns his livelihood; and

(e) One utility trailer.

(3) A right of personal servitude, of use and habitation, of usufruct of the estate of a minor child, and the income from dotal property; and (4)(a) The clothing, bedding, linen, chinaware, nonsterling silverware, glassware, living room, bedroom, and dining room furniture, cooking stove, heating and cooling equipment, one noncommercial sewing machine, equipment for required therapy, kitchen utensils, pressing irons, washers, dryers, refrigerators, deep freezers, electric or otherwise, used by him or a member of his family;

(b) The family portraits;

(c) His arms and military accoutrements;

(d) The musical instruments played or practiced on by him or a member of his family; and

(3) The poultry, fowl, and one cow kept by him for the use of his family.

B. (1) In cases instituted under the provisions of Title 11 of the United States Code, entitled "Bankruptcy", there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the state of Louisiana and under federal laws other than Subsection (d) of Section 522 of said Title 11 of the United States Code.

(2) No property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of this Chapter or be exempt from forced sale under process of law.

C. The state of Louisiana expressly waives any immunity from suit insofar as the garnishment of the nonexempt portion of the wages, salaries, commissions, or other compensation of public officials, whether elected or appointed, public employees, or contractors is concerned, of itself, its agencies, boards, commissions, political subdivisions, public corporations, and municipal corporations.

Amended by Acts 1977, No. 360, § 1; Acts 1978, No. 563, § 1; Acts 1979, No. 596; § 1; Acts 1980, No. 764; § 9; Acts 1981, Ex.Sess., No. 36, § 8, eff. Nov. 19, 1981; Acts 1982, No. 670, § 1; Acts 1982, No. 704, § 1, eff. Aug. 2, 1982; Acts 1893 [1983], No. 108, § 1; Acts 1983, No. 178, § 1.

West editors note:

1983 Amendments: Acts 1983, No. 108, § 1, rewrote par. (2) of subsec. A, which previously read:

"(2) The tools, instruments, and books necessary to the exercise of a trade, calling, or profession by which he earns his livelihood, in whole or in part, provided that motor vehicles and trailers, except either one pickup truck with a gross shipping weight of less than three tons or one utility vehicle with a gross shipping weight of less than three tons and, additionally, one trailer, each of which must be used in his trade, shall not be deemed to fall within the provisions of this paragraph;"

intricate series of cross references is to the effect that the reference to *522(b)* contained in *522(g)* is, (when dealing with the Louisiana debtor, as here), a reference to state law. Accordingly, it is to Louisiana's general exemption statute, *R.S. 13:3881*, and to the case law interpreting that statute that we must initially turn in assessing the exemptability vel non, of the boat in question.

At the time debtor filed his petition in bankruptcy *R.S. 13:3881* read, in pertinent part, as follows:

> A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever:
>
> . . . . .
>
> (2) The tools, instruments and books necessary to the exercise of a trade, calling or profession by which he earns his livelihood, *in whole or in part* ... (emphasis added)

However by *Acts 1983, No. 108 § 1*[3] the entire section (A)(2) was changed and no

longer contains the phrase "in whole or in part". Whether the dropping of that phrase represents a substantive change or is merely stylistic, will have to await future interpretation. The court feels, for reasons which will become apparent, that it is unnecessary to reach that issue for purposes of determining the outcome of the case at bar.

■ Pretermitting the effect of the chattel mortgage, Louisiana courts have as a general proposition interpreted *R.S. 13:3881* quite liberally in favor of the debtor, *Bank of Louisiana v. Nash*, 360 So.2d 259 (La.App. 4th Cir.1978). The Louisiana courts have consistently held that even large pieces of equipment, such as the boat in question, fall within the protective provisions of *R.S. 13:3881*, without any limitation as to their value, *Cox v. Smith*, 275 So.2d 459 (La.App. 2d Cir.1973); [compare *11 U.S.C. § 522(d)(6)*, which puts a $750 limit on such items]. Nor is it necessary for the debtor to show that he earns all or even a substantial portion of his income

---

**3.** Exemptions from Seizure—Motor Vehicle Necessary to Exercise of Debtor's Trade or Profession

Act No. 108
Senate Bill No. 215
An Act

To amend and reenact R.S. 13:3881(A)(2), relative to exemptions from seizure, to exempt from seizure a motor vehicle not described as a luxury vehicle in R.S. 39:365(B), which is necessary to the exercise of the debtor's trade, calling, or profession and one utility trailer, and to provide for related matters.

Be it enacted by the Legislature of Louisiana:
Section 1. R.S. 13:3881(A)(2) is hereby enacted to read as follows:
§ 3881. General exemptions from seizure
A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever.
 \* \* \* \* \* \*
(2) That property necessary to the exercise of a trade, calling, or profession by which he earns his livelihood, which shall be limited to the following:
 (a) Tools.
 (b) Instruments.
 (c) Books.
 (d) One pickup truck with a gross weight of less than three tons, or one motor vehicle, which does not possess any of the characteris-

tics of a luxury automobile as defined under R.S. 39:365(B) which also shall not be a vehicle used solely for transportation to and from the place at which the debtor earns his livelihood; and
 (e) One utility trailer.
 \* \* \* \* \* \*
Approved June 24, 1983.
*West* editors note:
 Effective Date of Laws
Article 3, Section 19 of the Louisiana Constitution of 1974 provides:
"All laws shall take effect on the sixtieth day after final adjournment of the session in which they were enacted, and shall be published prior thereto in the official journal of the state as provided by law. However, any bill may specify an earlier or later effective date."
The First Extraordinary Session of 1983 (the Eighth Extraordinary Session under the Constitution of 1974) convened on January 4, 1983, and adjourned sine die on January 17, 1983. The general effective date of laws enacted at the First Extraordinary Session of 1983 is March 18, 1983.
The 1983 Regular Session (the Ninth Regular Session under the Constitution of 1974) convened on April 18, 1983, and adjourned sine die on July 1, 1983. The general effective date of laws enacted at the 1983 Regular Session is August 30, 1983.

through the use of the item in question. He need only show that he earns his livelihood "in whole or in part" through the use of the 'tool' to be eligible for the exemption, *Cox* (supra); *Nash* (supra), *Matter of Hanks*, 11 B.R. 706, (U.S.D.C.W.D.La. 1977). Even where the "tool" has fallen into temporary disuse, as long as the debtor can demonstrate a present and reasonable intent to use it to earn his living in the future, he will not be precluded on this basis alone from claiming the exemption, *Nash* (supra); *Skelley v. Accounts Supervision Co.*, 53 So.2d 520 (La.App.2d Cir. 1951); *Lafourche Ice and Shrimp Co. v. Gilbeau*, 185 So. 310 (La.App. 1st Cir.1938).

 Nevertheless, despite the liberality of the above requirements, the debtor's mere characterization of an item as a "tool of his trade" is not enough. His claim to the exemption must be made in good faith and be supported by credible testimony and/or evidence, *Fallin v. J.J. Stovall & Sons*, 141 La. 220, 72 So. 911 (La.1917); *Bank of Louisiana v. Nash*, 360 So.2d 259 (La.App. 4th Cir.1978). This is especially true in a case, such as the one presently before the court, where the debtor is not currently using the item to earn his living, but claims that he intends to use it for such purposes in the future. In such a case the debtor must provide this court with more than his own self-serving declaration of intent before being allowed to deprive his creditors of such a valuable asset. Indeed, he must be able to demonstrate not only that his stated intent is made in good faith, but also that it is both reasonable and realistic, *Nash* (supra). This, the court feels Mr. Racca has clearly failed to do.

 Mr. Racca's testimony regarding the details of his shrimping operation can be characterized, at best, as sketchy and unsatisfactory. He failed to provide the court with a reasonable explanation of his income and expenses with regard to these operations; this in spite of the fact that he was granted a continuance and ordered by the court to present such an accounting. The only comprehensive income figure he could supply was the $12,000 figure; which by his own admission, he "guessed" at in order to file his tax return. Nor does this court find his explanation as to why he "temporarily" ceased shrimping operations credible, in light of his poor financial condition. In all, this court finds that Mr. Racca has failed to prove that the boat in question is necessary to his livelihood and would deny his claim to the exemption on that basis alone.

### Effect of the Chattel Mortgage

 Even if this court could find that the subject boat, under the circumstances, fell within the intendment of *R.S. 13:3881*, there remains a question concerning the effect of the chattel mortgage. *R.S. 13:3881* must be read 'in pari materia' with *R.S. 13:3885*. [4] The latter in effect provides that where a debtor has granted a chattel mortgage over his property he will not be allowed to take advantage of the exemption provisions of *13:3881*, at least to the extent of the mortgage.

Further it must be kept in mind that the trustee has not attacked the validity of the mortgage but has merely used his power as trustee to avoid a certain unprotected security interest, 11 U.S.C. § 544. Both as a matter of Louisiana law and as a matter of bankruptcy law, an unrecorded or unperfected security interest although ineffective against certain third parties, here the trustee, nevertheless remains valid and effective as between the parties—the whole purpose of recordation being the effectiveness vis a vis third parties, [La. law]

---

4. *LSA R.S. 13:3885*

Chattel mortgage; adequate description; exception in exemption from seizure.

A person who has granted a chattel mortgage containing an adequate description pursuant to R.S. 9:5352 on property provided for in R.S. 13:3881(A)(2) or (4) may not claim an exemption from a seizure to enforce that mortgage. A minor technical error in description shall not render the description inadequate for purposes of this Section, if the description is otherwise adequate for identification of the property.

Added by Acts 1979, No. 81, § 1. Amended by Acts 1983, No. 56 § 1.

**628**

CC3344; *W & W Oil v. American Supply Co.*, 8 So.2d 384 (La.App.1942); *Schutzman v. Dobrowolski*, 186 So. 338, 191 La. 791 (1939); *Haines v. Verret*, 11 La.Ann. 122 (1856). [Bkrtcy. law] *In Re Evingham*, 27 B.R. 128 (Bkrtcy., W.D.N.Y.1983); *Matter of Smith*, 16 B.R. 111 (Bkrtcy., E.D. Wisc.1981). Further, *11 U.S.C. § 551* allows the trustee to preserve for the benefit of the estate, the liens he avoids under his *544* powers. Thus, in a sense the trustee steps into the shoes of the defeated mortgagee. The sole applicable exception to this preservation power is where the debtor is able to utilize *522(g)* in order to claim his exemption on the recovered property.

■ Sec. 522(g) (supra) allows the debtor to claim the exemption on the recovered property only in either event that: (1) the lien was involuntary or (2) the debtor could have otherwise avoided the lien under the provisions of *11 U.S.C. § 522(f)*. Since there is no dispute that the lien in question was voluntarily placed on the property, the availability of *522(f)* vel non remains the only method by which the instant debtor could be allowed to claim his exemption in accordance with *522(g)*.

### Full Circle-The Rule of McManus

*11 U.S.C. § 522(f)* permits the debtor to avoid and to claim the exemption on certain types of property subject to a non-possessory, non-purchase money security interest. It provides in pertinent part as follows:

Not withstanding any waiver of exemptions the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a non-possessory, non-purchase money security interest in any—

(B) implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor (emphasis added)

This court *In Re Babcock*, 9 B.R. 475 (Bkrtcy.W.D.La.1981), the first reported

case to treat of the effect of *LSA R.S. 13:3885* vis-a-vis *11 U.S.C. § 522(f)*, concluded that where property is subject to a valid chattel mortgage the debtor cannot use 522(f) to avoid the effects of that mortgage. In that case this court reasoned as follows:

The key language in 11 U.S.C. 522(f) which allows the debtor to avoid the fixing of a lien on an interest in property to the extent such lien impairs an exemption is: "to which the debtor would have been entitled under subsection (b) of this section." This language is important because the power to avoid a lien under 522(f) is linked to 522(b). Section 522(b) is the subsection which gives the power to the States to enact their own exemption statutes and preclude the exemptions provided in 522(d) of the Bankruptcy Code. Therefore, the language in 522(f) which allows the debtor to avoid liens on property "to which the debtor would have been entitled under subsection (b)" means property exempt under State law when the State has taken the option to prohibit the Bankruptcy Code exemptions in favor of its own exemptions. In this case State law prohibits avoiding a lien on exempt property where there is a valid chattel mortgage. The exempt status of household items under Louisiana Revised Statutes 13:3881 is changed to non-exempt status by 13:3885.

The property described in 522(f) is not an exemption to which the debtor is entitled. Thus 522(f) could not apply to this situation. *Babcock* (supra) at p. 478

Subsequently, in a case which was on appeal at the time the *Babcock* decision was rendered and which dealt with virtually the identical situation, the U.S. Fifth Circuit Court of Appeal in *Matter of McManus*, 681 F.2d 353, 6 C.B.C. 1194 (U.S. 5th Cir. 1982) reached the same result based upon almost identical reasons. In fact that court, by whose decisions this court is bound,[5] in *McManus* went on to squarely hold:

5. The courts in several other jurisdictions have

since expressed agreement with *Babcock* and/or

Debtors in Louisiana are not entitled to exempt household goods and furnishings subject to a chattel mortgage from the bankruptcy estate. Consequently a Louisiana debtor may not utilize 11 USCA 522(f) to avoid a chattel mortgage. *McManus* (supra)

Accordingly, today returning to and reiterating the holdings and reasonings of *Babcock* and *McManus* this court finds that the debtor cannot be allowed to do indirectly through the use of *522(g)* what he is prevented from doing directly through the use of *522(f)*. Specifically the court holds: that a Louisiana debtor may not claim his exemption under *522(g)* on property subject to a voluntarily placed chattel mortgage, at least to the extent of that mortgage.

One further observation, the court notes that Mr. Racca also seems to imply that his equity interest in the subject boat exceeds the remaining balance owed on the debt secured by the chattel mortgage in question. However, the court finds that Mr. Racca has failed to prove this allegation. Therefore, the court does not reach the issue of what effect, if any, this would have on his ability to utilize *11 U.S.C. § 522(g)*.

Finally the court additionally does not reach the question of the timeliness of the petition to amend relative to Rule 1007(c) which the trustee has raised, as this question is also unnecessary to the determination of the case.

Judgment in accordance with the above will be signed upon submission. All costs of these proceedings are to be paid by the debtor.

---

McManus see eg.: *In Re Scott* 12 B.R. 613 (Bkrtcy.W.D.Okl.1981); *In Re Falck*, 12 B.R. 835 (Bkrtcy.C.D.Calf.1981) [expressing partial disagreement but following result]; *In Re Evans*, 25 B.R. 105 (Bkrtcy.M.D.Tex.1982)

—Some other courts however have expressed disagreement and have found that where state law would effect a deprivation of the use of 522(f), 522(f) through the "supremacy clause" preempts sec. eg. *Matter of Strain*, 16 B.R. 797 (Bkrtcy.I. Idaho 1982) citing in a footnote a rather extensive list of cases holding contra to *Babcock*

—This issue however, was addressed in *McManus* and the court found that R.S. 13:3885 did not conflict with 522(f) due to the effect of the opt-out provisions of 522(b)

—The court notes with interest that several other courts, (including some that have refused to follow *Babcock* and *McManus*), have viewed

522(f)(2) standing on its own to include only small hand tools, etc., which have little or no commercial value; they do so on a policy consideration that to allow exemptions on large valuable pieces of equipment would effectively take such items out of commerce and deprive their owner of financial flexibility. In the view of these courts such was not Congress's intent in enacting 522(f). See eg. *In Re O'Neal* 20 B.R. 13 (Bkrtcy.E.D.Missouri 1982); *In Re Yparrea*, 16 B.R. 33 (Bkrtcy.D.N.M.1981). What is interesting is that these cases illustrate the difficulty entailed in attempting to apply state exemption laws out of context. Under the Louisiana scheme for example this policy consideration is addressed not by putting a monetary limit on the exemption, as does 522(d)(6) but instead by not allowing the exemption to defeat a chattel mortgage.