**In re Michael Charles KOLSCH, Cathleen Michelle Kolsch, dba Body Talk, dba Grand Illusions, Debtors.**

**Bankruptcy No. 85–00777.**

United States Bankruptcy Court, D. Nevada.

Feb. 18, 1986.

Geoffrey Lynn Giles, Reno, Nev. for debtors.

Office of Dist. Atty., Fallon, Nev., for petitioner.

## MEMORANDUM DECISION AND ORDER

JAMES H. THOMPSON, Bankruptcy Judge.

The trustee, Jeri Coppa, objected to the debtors' claim of exemption in "tanning beds" and other business equipment to $9,000.00 in value. The debtors base their claim on Nev.Rev.Stat. 21.090(1)(d), the "tools of trade" exemption, and have doubled the $4,500.00 statutory allowance because this is a joint case, having been filed by husband and wife. The trustee's objection is based on the fact that the "tanning salon" was operated as a side-line; was not intended by the debtors to figure in their future support; and in fact the debtors ceased all business activity shortly after the petition was filed on August 27, 1985, and have not resumed operations since then. The trustee further contends that in any event, debtors are not entitled to double the statutory allowance.

Debtors argue (1) that since exemptions are to be determined as of the date of the petition, termination of business activity thereafter and the debtors' future intentions are irrelevant; (2) Bankruptcy Code

§ 522(m) [1] requires the doubling of exemptions for joint debtors even where the state has "opted out" of the federal exemption scheme, as here. See N.R.S. 21.090(3). A hearing was conducted on December 3, 1985, and the matter submitted for the Court's decision. For the reasons set forth below, the trustee's objections are sustained.

▮ Debtors' statement of the "general rule" is correct: The right to exemptions is determined as of the date the petition is filed. *In re Johnson*, 19 B.R. 371, 374 (Bankr.D.Kan.1982); *Matter of Hahn*, 5 B.R. 242, 245 (Bankr.S.D.Iowa 1980); 11 U.S.C. § 522(b)(2)(A). However, this rule, as all others, is subject to qualification and interpretation. Where a state has "opted out", § 522(b)(2)(A) refers to the state or local law that is *applicable* on the date of the filing of the petition. A state that has "opted out" has considerable freedom in creating exemptions and eligibility requirements for those exemptions. *Granger v. Watson*, 754 F.2d 1490, 1492 (9th Cir.1985). For example, the state law applicable on the date of the filing may provide that the amount of an exemption will be governed by the law in effect at the time the debt was created. *See First National Bank of Mobile v. Norris*, 701 F.2d 902 (11th Cir. 1983), cited with approval in *Granger* at 1491. Similarly, if applicable law contemplates an examination into the debtor's past or future, the Court is not precluded from making appropriate inquiries where the circumstances warrant.

▮ Here, the Court's decision is governed by the requirements of the Nevada "tools of trade" exemption, found at N.R.S. 21.090(1)(d). This section provides:

1. The following property is exempt from execution ...

(d) Professional libraries, office equipment, office supplies and the tools, instruments and materials used to carry on the trade of the judgment debtor

for the support of himself and his family not to exceed $4,500 in value.

Long ago, the Nevada Supreme Court stated that the purpose of the State's occupation-related exemptions was to ensure that the debtor is not "left without the means of supporting himself and his family in the vocation usually pursued by him" and "to secure to the debtor the necessary means of gaining a livelihood, while doing as little injury as possible to [his] creditor[s]." *Kreig v. Fellows*, 21 Nev. 307, 309, 310 (1892). Thus, the statute contemplates that "tools of trade" will be exempt where the debtor wishes to continue in his trade or profession, even if on the date of filing he was not so engaged. See *Hahn, supra*, at 245; *In re Racca*, 40 B.R. 622, 627 (Bankr.W.D.La.1984); *Flick v. United States*, 47 B.R. 440, 443 (W.D.Pa.1985). See also *Middleton v. Farmers State Bank of Fosston (In re Middleton)*, 45 B.R. 744, 747 (Bankr.D.Minn.1985) (in order to provide debtors with a fresh start, Congress allows debtors to keep the property which will enable them to *continue* their chosen trade or profession); *Quidley v. Small Business Administration, (In re Quidley)*, 39 B.R. 362, 367 (Bankr.E.D.Va.1984) (purpose of Virginia "tools of trade" exemption is to aid the debtor in *continuing* his means of livelihood); *England v. First National Bank of Bonham, (In re England)*, 22 B.R. 389, 391 (Bankr.N.D.Tex.1982) (purpose of Texas statute is to allow the debtor to keep those items which will enable him to conduct his trade or profession in approximately the *same manner after bankruptcy* as he did before bankruptcy).

Another feature of the Nevada statute is the requirement that the claimed trade or profession actually figure in the *support* of the debtor and his family. In cases where there has been a controversy as to whether the debtor was "legitimately engaged" in a particular trade, courts have looked to the extent to which that trade actually provided some significant support in the past. See *Walkington v. Production Credit As-*

---

**1.** § 522(m): Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.

*sociation (In re Walkington)*, 42 B.R. 67, 72 (Bankr.W.D.Mich.1984); *Yoder v. United States (In re Yoder)*, 32 B.R. 777, 780–781 (Bankr.W.D.Pa.1983), *aff'd in part and rev'd in part on other grounds*, 48 B.R. 744 (W.D.Pa.1984). Thus in *Yoder*, the bankruptcy court held that the debtor was a *bona fide* farmer and thus entitled to claim farming-related exemptions, where approximately one-half of debtor's total income was derived from farming. In *Walkington*, the court found that the debtor was a musician and could exempt his organ and related equipment, where he had been engaged in that trade for twenty years, and two-thirds of his income was derived from his musical pursuits. The court noted that although most of debtor's time was spent as a salesman, the evidence showed that debtor's income from organ playing was both substantial and actually needed for support.

■ Many courts have held that a debtor may exempt property related only to his *principal* occupation, and that a debtor may claim only one such occupation. See *In re Samuel*, 36 B.R. 312, 314 (Bankr.E.D. Va.1984) and cases cited. The Nevada statute at issue here need not be interpreted so strictly. Nev.Rev.Stat. 21.090(1)(d) refers simply to the trade or profession used to "support" the debtor and his family. Although the court need not address this precise issue at this time, it does appear that an exemption might be allowed if the debtor shows that he earns his livelihood in whole or in part through the use of the claimed property. *See e.g., Hahn* 5 B.R. at 245 (it is not necessary that the person claiming the exemption wholly earn his living using the items claimed as exempt). However, in order not to substantially depart from the express language of the statute, or extend the legislative grant beyond the intentions of the legislature, *id.* at 244, the court must require at a minimum that the claimed trade or profession have actually contributed to the support of the debtor and his family to some reasonable and meaningful extent in the past. In the absence of this past history of support, or where the debtor has ceased using the property claimed as exempt, the court must require that the debtor demonstrate a reasonable and realistic prospect of using the property to earn his living in the future. See *Racca*, 40 B.R. at 627; *Johnson*, 19 B.R. at 375; *Samuel*, 36 B.R. at 315.

Although the debtors here did not appear at the hearing of the trustee's objections and testify, their statement of financial affairs filed with their petition indicate the following: The tanning business was commenced in November 1984, approximately ten months prior to the bankruptcy filing; debtors intended to terminate the business; both debtors were employed full-time in other occupations; and significantly, the tanning salon business never contributed to the basic support of the debtors. Thus, even on the day of filing, debtors were planning to terminate the business and did so a mere five days thereafter, according to the representations made at the hearing.

■ From the foregoing the court concludes that the "tanning" business never did rise to the level of debtors' "trade or profession" by which they earned a living even in part. Instead, this was just a short-lived experimental venture which never got off the ground financially, and never provided the debtors with actual support. Debtors have not demonstrated an intention to re-engage in the business in the future, nor any realistic prospects for earning their livelihood from this type of business. Therefore, for the court to allow the claimed exemptions would unnecessarily and unfairly harm this estate's creditors, as the purpose of the "tools of trade" exemption would not be furthered thereby.[2] Accordingly,

2. Having made this determination, the court need not reach the issue whether joint debtors may double the state exemption allowance. However, the court will note that Code § 522(m) is not to be interpreted as the debtors here suggest: The Ninth Circuit has recently held that a state which has opted out of § 522(d) and provides its own system of exemptions is not bound by subsection (m) as to those exemptions. *Granger v. Watson, supra.*

IT IS HEREBY ORDERED, that the trustee's objection is SUSTAINED.