**In re Fred Dick CURRIE, Linda Lu Currie, Debtors.**

**Bankruptcy No. 83–20064.**

United States District Court,
D. Kansas.

Oct. 27, 1983.

Richard C. Wallace, Kansas City, Kan., for debtors.

Eric C. Rajala, Kansas City, Kan., Trustee.

Thomas A. Valentine, Topeka, Kan., for creditor.

Carol Park, Wichita, Kan., Asst. U.S. Trustee.

## CERTIFICATE OF REVIEW

SAFFELS, District Judge.

The attached order has been certified by Bankruptcy Judge Benjamin E. Franklin under Rule 42(e)(2)(a) of the Local Rules of Court for this District. Upon review of the same in accordance with Rule 42(e)(2)(b) of said Local Rules, the undersigned hereby approves and adopts said order in its entirety including the findings of fact and conclusions of law therein contained.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing at Kansas City, Kansas, on July 11, 1983, of the debtors' application to avoid lien of Santa Fe Credit Union (hereafter SFCU) and SFCU's objection thereto. The debtors, Fred and Linda Currie, appeared in person and by Richard C. Wallace of Evans, Mullinix & Jarczyk. SFCU appeared by Thomas A. Valentine of Sloan, Listrom, Eisenbarth, Sloan & Glassman.

## FINDINGS OF FACT

Based on the exhibits, testimony, pleadings and file, the Court finds as follows:

1. That the Court has jurisdiction of the parties and subject matter; and that venue is proper.

2. That the debtors filed a Chapter 7 petition on January 24, 1983, and were discharged on July 20, 1983.

3. That Mr. Currie is disabled and receives retirement pay from Santa Fe Railroad. Mrs. Currie is a farmer, buying calves and feeding them out. She uses a 1978 Ford ¾ ton, four wheel drive pickup with attached 1981 gooseneck trailer to haul the cattle to and from market. She generally keeps the trailer hooked to the truck, as it is difficult to dislodge; except during the winter months, she uses the truck alone to pick up hay for the cattle. She uses a 1976 Ford Torino for household purposes and to pick up farming supplies. She also uses it to attend cattle auctions, rather than using the gas guzzling truck and trailer, when she is unsure the auctions will have suitable calves.

4. That the debtors are joint title owners of the pickup, trailer and Torino. These items are valued as follows: pick-up, $1800.00; trailer, $1900.00; and Torino, $400.00.

5. That SFCU has nonpurchase money, nonpossessory liens against the pickup, trailer and Torino, which were duly perfected by notation on the titles of said vehicles. SFCU's claim is for $4,626.68 plus interest from the date of default through the date of the petition.

6. That in June, 1982, SFCU loaned Mr. Currie $3,000.00 and in August, 1982, it loaned him $2,000.00. Mr. Currie was a member of SFCU and he applied for the loans; Mrs. Currie was not a member of SFCU and she did not sign the loan applications. Mr. Currie disclosed his income, but not Mrs. Currie's income, in the financial

statement he submitted to SFCU in June, 1982.

7. That both debtors executed the security agreements, dated June 24, 1982 and August 27, 1982. They both signed on lines designated "debtor or guarantor". On both security agreements they checked a box indicating the collateral was used for personal, family or household purposes. They did not check the boxes indicating farming or business use.

## CONCLUSIONS OF LAW

### I.

The debtors seek to avoid SFCU's liens against the vehicles and trailer, pursuant to 11 USC § 522(f)(2)(B), as tools of trade. SFCU's first contention is that the debtors' characterization of the collateral in the security agreements, as used for family, personal or household purposes is conclusive; and that their testimony that it was actually used for farming is inadmissible under the parol evidence rule.

SFCU cites several cases for the proposition that the UCC classification of collateral in a security agreement controls over the debtor's parol or extrinsic evidence of the use or type of collateral. See, e.g., *In re Barnes,* 11 UCCRS 670 (USDC Maine 1972); *In re Pettit,* 18 B.R. 8 (Bkrtcy.E.D.Ark. 1981); *McGehee v. Exchange Bank & Trust Co.,* 561 S.W.2d 926, 23 UCCRS 816 (Tex. Civ.App.1978).

None of these cases is on point, however. In each case, the issue was whether the creditor had properly perfected its interest, given the type of collateral. Each court held that the creditor had a right to rely on the classification given in the security agreement and that the debtor's parol evidence that the collateral was of a different type or class would not defeat the creditor's perfected security interest.

SFCU also cites a case decided by a bankruptcy judge in this district, *In re Skillett,* 82–40836, 83–0077, (June 1; 1983, D. Kan., J. Pusateri). That case is equally distinguishable. There the court held the creditor had a right to rely on the

classification in the security agreement, business property, so that the creditor's security interest would attach to after-acquired property under K.S.A. 84–9–204(2). Had the court accepted the debtor's parol evidence that the collateral was in fact, consumer goods, the creditor's security interest would not have attached to after-acquired property.

■ SFCU cites no cases and this Court finds no authority for the proposition that a security agreement designation of collateral as consumer goods defeats the exemption of said collateral as tools of trade under K.S.A. 60–2304(5) and defeats lien avoidance under § 522(f)(2)(B). A careful reading of both statutes indicates that the debtor is entitled to exempt and avoid liens on property actually used as tools of trade. 11 U.S.C. § 522(f)(2)(B) states:

"§ 522. Exemptions.

\* \* \* \* \* \*

*(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—*

\* \* \* \* \* \*

*(2) a nonpossessory, nonpurchase-money security interest in any—*

\* \* \* \* \* \*

*(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;"*

K.S.A. 60–2304(5) states:

"60–2304. Personal property; articles exempt. *Every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property:*

\* \* \* \* \* \*

*(5) The books, documents, furniture, instruments, tools, implements and equipment, the breeding stock, seed grain or*

*growing plant stock, or the other tangible means of production regularly and reasonably necessary in carrying on the person's profession, trade, business or occupation in an aggregate value not to exceed five thousand dollars."*

■ Neither statute limits the debtors' rights based on the classification of the collateral in the security agreement. Rather the language of each statute indicates that collateral actually used as tools of trade is applicable. Furthermore, it has long been settled that exemption rights in bankruptcy are determined as of the date of the petition. *Mansell v. Carroll,* 379 F.2d 682, 685 (10th Cir.1967). Thus, even if these debtors used the collateral for household purposes at the time of the security agreements, their evidence of use on the petition date is what is pertinent.

■ Therefore, the Court finds from the evidence that the collateral was and is used for farming, which controls over the debtors' earlier classification of such collateral in the security agreements.

## II.

■ The next issue is whether all three items qualify as tools of trade under K.S.A. 60–2304(5). The test in Kansas has long been that the property must be reasonably necessary, convenient or suitable for the production of work. *Reeves v. Bascue,* 76 Kan. 333, 91 P. 77 (1907).

■ The Court is certain that the pickup and trailer meet the test. Mrs. Currie could not continue her cattle operation without the means to haul the cattle to and from market. Furthermore, she uses the four wheel drive pickup in the winter to haul hay for the cattle. She testified that it would be cost prohibitive to hire someone to deliver hay to her.

■ However, the Court finds that the Torino is not reasonably necessary for the production of work. Mrs. Currie admits that it is the family car. Although she uses it to pick up supplies and attend auctions, she could do the same in the pickup. The fact that the Torino gets better gas mileage

than the pickup is not sufficient reason to avoid SFCU's lien on the Torino. Mrs. Currie's cattle operation is not uniquely dependent on the use of the car and she has not demonstrated that the pickup cannot be used for the same tasks she now uses the Torino for. See *In re Meany,* 35 B.R. 3 (D.Kan., 1982).

Therefore, the Court finds that the pickup and trailer are tools of trade within the meaning of K.S.A. 60–2304(5); but the Torino is not.

## III.

■ SFCU's final contention is that even if the items are tools of trade, Mr. Currie (who is not a farmer) is not entitled to the exemption or lien avoidance; and neither is Mrs. Currie because as a mere guarantor of Mr. Currie's debt to SFCU, her rights can be no greater than Mr. Currie's.

■ The Court finds this contention without merit for several reasons. First, § 522(m) states that the lien avoidance provisions apply separately with respect to each debtor in a joint case, and the legislative history states that each debtor in a joint case is entitled to the state exemptions. See H.R. 95–595, 95th Cong., 1st Sess. (1977) 363, U.S.Code Cong. & Admin. News 1978, p. 5787. Thus, where one spouse is employed and the other is not, both spouses are entitled to the tool of trade exemption. This upholds the policy of exemption statutes, to protect debtors *and their dependents* by giving them the means to avoid destitution. To that end, dependents may claim the exemptions to the same extent the debtor can, because exemption laws are to be construed liberally in favor of those they are intended to protect. See § 522(*l*); *Nohinek v. Logsdon,* 6 Kan.App.2d 342, 628 P.2d 257 (1981); 3 Collier on Bankruptcy 2d, § 522.05[1] (15th ed.) 522–18, 522–19.

Secondly, even if Mr. Currie is not entitled to the tool of trade exemption, Mrs. Currie is. Irrespective of her status as co-maker or guarantor, she signed the security

agreement, and SFCU's lien encumbers her legal interest as a title owner as much as it encumbers Mr. Currie's interest. Thus, Mrs. Currie is entitled to the protection § 522(f)(2)(B) affords.

IT IS THEREFORE, BY THE COURT, ORDERED That SFCU's lien be and the same is hereby avoided on the 1978 Ford pickup, valued at $1800.00; and the 1981 gooseneck trailer, valued at $1900.00, such that SFCU's lien is avoided to the extent of $3700.00.

IT IS FURTHER, BY THE COURT, ORDERED That the debtors' application to avoid lien on the 1976 Ford Torino valued at $400.00 be and the same is overruled and denied.