**In re Ellis R. HUIZAR d/b/a Southwest Motor Home, Huizar Motor Homes, Debtor.**

**Ellis R. HUIZAR d/b/a Southwest Motor Home, Huizar Motor Homes, Plaintiff,**

v.

**The BANK OF ROBSTOWN, Defendant.**

Bankruptcy No. 5–86–00041–K.

Adv. No. 5–86–0230.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Feb. 25, 1987.

William H. Tennant, Jr., San Antonio, Tex., for plaintiff.

Harrell Z. Browning, Diane W. Putnam, Harris, Cook, Browning, Jordan & Hyden, Corpus Christi, Tex., for defendant.

## MEMORANDUM OF DECISION

LARRY E. KELLY, Bankruptcy Judge.

Ellis R. Huizar d/b/a Southwest Motor Home and Huizar Motor Homes ("Huizar" or "Debtor"), filed an adversary proceeding to avoid Deed of Trust Lien and to set aside Warranty Deed and transfer of real property for alleged fraud and deceptive trade practices. The Defendant, Bank of Robstown ("Bank") filed a counterclaim asserting that this action was groundless and brought in bad faith. For hearing on the merits the Court consolidated a prior motion filed by the Bank for relief from stay seeking authority to obtain possession of certain property which had been deeded to it by Ellis R. Huizar (Huizar) pre-petition with an objection by the Bank to Huizar's claimed exemptions in this case.

### I. SUMMARY OF FACTS

A. The Bank Notes and Agreement

On January 2, 1985, Huizar executed a promissory note payable to the Bank in the original principal sum of $480,000 reciting that it renewed a previous line of credit. The maturity date of this note was August 25, 1985. Contemporaneously with the execution of this note, Huizar executed various Deeds of Trust to secure payment of this line of credit with certain tracts of real property. Among these tracts was the "Harpers Ferry" property which the Debtor now claims as homestead.

On February 7, 1985, Huizar executed a master revolving promissory note in the original principal sum of $250,000. This note was secured by Huizar's inventory, primarily consisting of motor homes and automobiles. The maturity date of this note was also August 15, 1985.

Neither note was paid in full on its maturity date. By September 3, 1985, the parties agreed that both notes were in default and that the aggregate balance due and owing to the Bank was $425,454.90.

On September 3, 1985, the Bank and Huizar entered into a written agreement and a 90–day renewal note for the balance owing to the Bank.

The written agreement provided in pertinent part that the two previous notes were in default and that demand had properly been made by the Bank. As consideration for the Bank's renewal, extension and combination of these notes into the September 3 note, Debtor agreed to convey to the Bank, by General Warranty Deed, fee title to the five parcels of real estate pledged by the January 1985 Deeds of Trust. Among the five tracts was the Harpers Ferry property.

The Bank's consideration was as follows: the Bank extended and renewed for 90 days a note in the amount of $425,454.90; the Bank also accepted four tracts of real estate and credited against the note their estimated market values as set out in the written agreement. Debtor was allowed to sell his inventory and apply the proceeds to the note. If the inventory was not sold in 90 days, it was to be turned over to the Bank.

The Harpers Ferry property received different treatment. The Bank had the option to credit the estimated market value of this tract ($50,000), less the balance due and owing on a prior outstanding first lien (approximately $20,000), while Huizar received the right of first refusal to repurchase the property.

The parties also entered into a mutual release agreement. It recited that the Debtor had read carefully and understood the agreement and that any and all prior agreements were merged into this written document.

### B.  The Harpers Ferry Property

Debtor acquired the Harpers Ferry Property in or about November 1984 as a down payment on a motor home he sold. Debtor testified that while he had no intention to claim this property as homestead when he acquired it, he changed his mind while improving the property. The Debtor further testified that he moved into the property in December 1984 after spending $12,000 to $15,000 on improvements. The testimony is clear that Huizar did not specifically advise the Bank that he claimed the Harpers Ferry property as his homestead, nor was the Bank informed before the Deed of Trust lien was given in January 1985. Pursuant to the terms of the September 3 Agreement, a Warranty Deed to the Harpers Ferry Property was delivered to the Bank and recorded on September 4, 1985. Huizar filed his voluntary petition seeking relief under the provisions of Chapter 11 of Title 11, United States Code on January 7, 1986.

### C.  Post-Petition Activities

Debtor's schedules filed in bankruptcy listed the Debtor's homestead as a tract of real estate located on San Pedro Road in San Antonio. Creditors filed objections to this claimed exemption as well as to personalty. On May 15, 1986, the Court required Debtor to amend his schedules by itemizing all personal property claimed as exempt and to specify the location, size, description and present use of the San Pedro property. The Debtor was further ordered to designate a one-acre tract, as allowed by state law, on the San Pedro property to be claimed as urban homestead. Debtor failed to meet the Court-ordered deadline of June 15, 1986.

On July 22, 1986, the Bank filed a Motion for Relief from the Automatic Stay alleging that the Debtor, although having deeded the property to the Bank, refused to vacate. The Bank sought relief in order to pursue state action to obtain possession of the property.

On August 6, 1986, Huizar filed an Amended B–4 Schedule, changing his homestead exemption to the Harpers Ferry property, consisting of a small lot and home. The Debtor's personalty was not described as required by the Court's May 15 order, but the values were substantially reduced so as to fall within the limits allowed by state law. The Bank timely filed

an objection to this Amended Claim of Exemptions as to the Harpers Ferry property as well as to all personalty claimed by the Debtor.

On August 11, 1986, Debtor filed this adversary proceeding seeking alternatively to avoid the Original Deed of Trust lien granted to the Bank in January 1985 or to set aside the September 3, 1985 transfer of the Harpers Ferry property to the Bank by General Warranty Deed. Debtor relies on fraud or preferential transfer as the general allegations for this avoidance. Huizar also sought damages, asserting that the Bank had engaged in false, misleading, and deceptive practices as prohibited by applicable state law.

The Bank denied Debtor's allegations and filed a counterclaim, asserting that Huizar's complaint was frivolous and filed primarily to harass the Bank and further urged consideration of its Motion for Relief from Stay and objection to Debtor's exemptions. Previously, the Bank had waived its right to a hearing within the 30 days as required by Bankruptcy Code § 362(e).

## II. DISCUSSION

### A. Exempt Property

Upon filing his bankruptcy petition, all property interests of the Debtor entered the bankruptcy estate, 11 U.S.C. § 541, subject to being withdrawn by the Debtor as exempt property under 11 U.S.C. § 522. Section 522(b) allows a Debtor to use applicable state law exemptions, as the Debtor did in this case.

■ The Bank vigorously asserts that the Debtor was in bad faith when he amended his Schedules and consequently his claimed exemptions should be denied. However, Bankruptcy Rule 1009 allows a Debtor to amend his voluntary petition, schedules, or statement of affairs as a matter of course at anytime before the case is closed. Absent a showing of bad faith or prejudice to creditors, the Fifth Circuit generally permits amendments to exemption claims before the bankruptcy case is closed. *In re Williamson*, 804 F.2d 1355 (5th Cir.1986). While there is evidence supporting the Bank's assertion, the Court does not find sufficient evidence to compel it to render a finding on that basis. The Court, therefore will not deny the claimed exemption solely because of the subsequent late amendment by Huizar.

Claiming an exemption does not however establish that the property in question is in fact exempt. If a timely objection is filed, then the Court must determine the Debtor's entitlement to the exemptions. As to homestead exemptions, a bankruptcy court must turn to state law for interpretation of state exemption rights. *In re Barnhart*, 47 B.R. 277 (Bankr.N.D.Tex.1985). In Texas a homestead is defined by Article XVI, Section 51 of the Texas Constitution which sets forth the applicable Texas Homestead Exemption and provides in pertinent part:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land, provided that the same shall be used for the purposes of a home, or as a plan to exercise the calling or business of the homestead claimed, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

The effect of the homestead designation is also stated at V.T.C.A., Property Code § 41.001:

> (a) To be a homestead property must be used by a homestead claimant as a home or as a place to exercise the calling or business to provide for a family or a single adult who is not a member of the family. The homestead consists of:
>
> (1) one or more parcels of real property, including improvements, that is not in a city, town, or village and that total not more than 200 acres for a family or not more than 100 acres for a single adult who is not a member of the family; or

(2) one or more lots in a city, town, or village, amounting to not more than one acre of land, together with any improvements on the land.

(b) Temporary renting of a homestead does not change its homestead character if the homestead claimant has not acquired another homestead.

(c) The exemptions provided to homesteads under this section apply to all homesteads in this state regardless of the date they were created.

■ Texas Property Code Section 41.002 also makes it clear that if the Harpers Ferry property was homestead in December 1984, the Deed of Trust lien given to the Bank in January 1985 was unenforceable as it was not for purchase money or home improvements. The burden of proof on this issue is on the party objecting to the claimed homestead interest.

■ Absent actual occupany, some overt act of preparation is required to establish a homestead right in order to corroborate claimant's testimony that he intended to occupy the property as his homestead. *Clark v. Salinas*, 626 S.W.2d 118 (Tex.App. 1981), *ref'd n.r.e.* 628 S.W.2d 51 (Tex.1982). The evidence in this case was uncontroverted that the Debtor extensively remodeled the house and spent $12,000 to $15,000 before January 1985. In disputed testimony the Debtor stated that he had vacated a rented apartment and began moving into the Harpers Ferry house in December 1984. Other evidence was introduced to reflect that notice was given to Debtor's landlord of his intention to move out in February 1985. The facts are not conclusive as to when the Debtor moved into the Harper's Ferry house. For this reason, the Court finds that the Bank has not met its burden of proof as required by Bankruptcy Rule 4003(c), and for the purposes of this hearing, finds that the Debtor established a homestead interest in the Harpers Ferry property as of January 3, 1986.

### B. Avoidance Powers

■ A debtor's right to exemptions is determined as of the date the bankruptcy petition is filed. *In re Kolsch*, 58 B.R. 67 (Bankr.D.Nev.1986); *In re Currie*, 34 B.R. 745 (D.C.Kan.1983). It is uncontroverted that the Harpers Ferry property was conveyed to the Bank pre-petition. Thus, the Debtor may not exempt this property unless it can be recovered under an avoidance power and returned to the estate.

Whether the Bank's Deed of Trust lien was enforceable against the Harpers Ferry property in January 1985 is of little importance, for the Debtor voluntarily conveyed the property to the Bank on September 3, 1985. The Court will focus on the Debtor's allegation that this transfer is voidable as a preferential transfer.

Preferences are to be determined in accordance with the Bankruptcy Code requirements of § 547(b) which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Debtor has the burden of proof to establish a preference under § 547(g).

It is undisputed that this transfer of the property meets the elements of § 547(b)(1) and (2). However, no evidence was presented establishing the Debtor's solvency or insolvency, using the balance sheet test of § 101(31).

### C. Timing of a Preferential Transfer

For preferential purposes, the transfer occurred when the deed was recorded, which the evidence established as September 4, 1986. 11 U.S.C. § 547(e)(1). This date was more than 90 days prior to the filing of the bankruptcy petition. Thus, for the Debtor to establish that the transaction was a preferential transfer, he must also establish that the Bank was an insider as defined by § 101(28)(A). Huizar has failed to meet this test.

■ The definition of "insider" is not limited to the examples given in the Code. Debtor contends that the Bank exercised such control or influence over him so that the Harpers Ferry transactions were not arms-length, and thus voidable. Huizar urges the Court to consider *In re Lemanski*, 56 B.R. 981 (Bankr.W.D.Wisc.1986), which held that a party could be found an insider when it exercised such control or influence over the Debtor that their transactions were not arms-length. The purpose of the insider provisions of the Code is to protect general creditors from overreaching by those with special power or influence over the debtor.

■ This Court recognizes that the statutory definition of an insider is not limiting and must be applied flexibly on a case by case basis. *In re Missionary Baptist Foundation of America*, 712 F.2d 206 (5th Cir.1983). The only credible evidence on the point, however, shows that the current president of the Bank had been a close friend of the Debtor when the president was a loan officer at a previous bank. When he moved to Bank of Robstown, the president solicited Huizar's business and became Huizar's primary lender. Over the years Huizar referred customers to the Bank, paid one or more unrelated loans which his employees owed the Bank, had loans aggregating two or three million dollars owing to the Bank, and took at least one vacation with the Bank president. The Debtor testified that he considered the Bank president to be his closest friend.

■ There was no credible testimony before the Court to allow it to find that any of the transactions were other than properly negotiated loan transactions. All were evidenced by executed notes and the September 1985 agreement was in writing and signed by both parties.

Many courts have considered the issue of insider preferences and the amount of control necessary to support a finding of an insider relationship between the debtor and its creditor. The cases examining this relationship have routinely held that a bank's financial power over the debtor does not by itself render the bank and "insider" for purposes of § 547 of the Code. *In re Jefferson Mortgage Co., Inc.*, 25 B.R. 963 (Bankr.D.N.J.1982), is a case involving an attempt by a trustee to avoid certain transfers of security interest to the bank on the basis of insider control. The court held that "... this control was merely incidental to their creditor-debtor relationship. The creditor had only financial power over the debtor, and the debtor could have terminated the relationship at anytime and looked for another creditor." *See also In re Belco, Inc.*, 38 B.R. 525 (Bankr.W.D.Okla. 1984), (refusing to find insider control by a creditor-bank, stating that the bank possessed no stranglehold on the debtor so as to render the debtor powerless to act independently of the bank); *In re Hartley*, 52 B.R. 679 (Bankr.N.D.Ohio 1985), (a case involving examples of personal relationships between the debtor and the president of the bank in question. That court rejected the trustee's contention of an insider relationship, holding that while the debtor and the bank undertook acts which were at best commercially questionable, the relationship did not rise to the level of proof that the bank was the "mere instrumentality or alter ego" of the debtor. The court

further noted that the bank's insistence on a stock pledge from the debtor during the insider preference period supported a finding that the bank was an arms length creditor.); *In re Technology for Energy Corporation*, 56 B.R. 307 (Bankr.E.D.Tenn.1985) (court rejected contention that a creditor-bank was an insider where evidence failed to show that the bank held any significant control over the debtor's business operations, notwithstanding the bank held voting control pursuant to the bank stock ownership and the debtor).

As demonstrated by the existing case law, courts which have considered the insider preference issue as between a debtor and a creditor-bank have adopted a view that a creditor-lending institution must be able to exercise a reasonable amount of debtor control without fear of being labelled an insider. This Court agrees with this position. In the case at hand, there has been no credible evidence presented to this Court to demonstrate that the Bank of Robstown held any form of actual or unreasonable control over the Debtor or his sole proprietor business entities. For this Court to find the existence of an "insider" relationship between the creditor-bank and the Debtor for purposes of the insider preference provisions of the Bankruptcy Code, solely based upon the admitted personal relationship which had developed between the Debtor and the president of the Bank of Robstown, would call into question virtually every lending transaction between a debtor and its long standing lending institution and would result in the unreasonable conclusion that borrowers could only deal with bankers that were not friendly or understanding.

■ Under the provisions of § 547 of the Code, the debtor in possession, in its position as trustee, has the burden of proving all five elements of a preferencial transfer. While the debtor is presumed to be insolvent during the 90–day preference period pursuant to 11 U.S.C. § 547(f), the Code does not grant a presumption of insolvency in cases in which a preferential payment is made to an alleged insider between 90 days and one year of the filing of the petition in bankruptcy. A showing of a mere suspicion of insolvency will not do. *In re Gruber Bottling Works, Inc.*, 16 B.R. 348 (Bankr.E.D.Pa.1982). The record at trial is wholly without evidence regarding the Debtor's insolvency on the date of the execution of the Warranty Deed to the Harpers Ferry property and further, as stated above, is without sufficient evidence to indicate that the Bank is an insider. The transaction in question took place outside the preference period. For these reasons, the Court finds that the Debtor has failed to meet his burden of proof and is not entitled to relief on the issue of preference.

The Court has been unable to find any evidence of actionable fraud or a violation of the Texas Deceptive Trade Practices Act from the facts before it and therefore relief will be denied on these grounds also.

The objection by the Bank to the claimed personal property of the Debtor was not actually litigated at this hearing and testimony was limited to the transactions involving the tracts of real estate. For this reason the Court will set a hearing upon notice to the parties in interest to consider the issues relating to the Debtor's claim to personal property exemptions and the objections asserted by the Bank.

This Memorandum of Decision shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. An Order consistent with this Memorandum of Decision shall be entered contemporaneously herewith.