**In re Darryl R. BROWN and Lieu Brown, Debtors.**

**Bankruptcy No. 89–52308–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 4, 1990.

See also, Bkrtcy., 113 B.R. 318.

Robert D. Valdespino, Valdespino Law Office, San Antonio, Tex., for debtors.

Charles Russell Bomba, Law Office of John M. Killian & Associates, San Antonio, Tex., for First Nat. Bank of Poth.

## DECISION AND ORDER OVERRULING OBJECTION OF FIRST NATIONAL BANK OF POTH TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the objection of First National Bank of Poth Debtors to Debtors' asserted homestead exemption. Upon consideration thereof, the court finds and concludes that the objection must be overruled.

## BACKGROUND FACTS

The Debtors owned some rural land outside Floresville, Texas. They have lived continuously on this land since at least 1979. Mr. Brown is a building designer who specializes in the design and construction of metal buildings. In 1984 he obtained the first of a series of loans to finance and refinance the cost of constructing a metal building ostensibly to be used as his office. First National Bank of Poth took a personal property security interest in the structure, and extended further loans to the Browns for other business purposes secured by the structure. The security interest was duly perfected by a filing in the personal property records of the secretary of the State of Texas, but the bank never obtained a mortgage on the property, nor did it ever record this security interest in the building in the real property records.

The Browns represented to the Bank, the insurance company, an appraiser and others that the building was to be their office, that it would be portable in nature, and that they would be moving the structure to a different site as soon as they acquired that site. The Browns in fact constructed the structure on the property, affixed the structure to the land, and eventually moved into it as their home in late 1984 or early 1985, some time after they had given the Bank a security interest in the structure. Before moving into the metal building, they had been living in another, somewhat dilapidated structure on the property. The metal building, while not very large, is of sufficient size to serve as a home, though the plans shown to the bank did not give any indication that the building would be (or could be) used as a home. The original plans did not show any living space, though blue prints (not shown to the bank) did make provision for a bathroom and kitchen area, making conversion to residential use relatively easy.

The metal building was attached to the ground with metal devices designed to keep

it from being blown down in a high wind. The devices are similar to those used for mobile homes, though the basic structure of the "foundation" differs from standard mobile home construction. The engineering plans (which were not shown to the Bank) showed the building is attached to the ground via steel blocks and steel columns, anchored into concrete. The building lacks the "skids" normally associated with a portable building. The building is quite tall for a metal structure, and the metal beams which form the base of the structure are not spaced on the same Centers as are mobile homes, making truck transport much more difficult. While the building could conceivably be moved, the task would be about as difficult and cumbersome as would a house-moving project.

## ANALYSIS

The foregoing facts indicate that the property in question qualifies as the Debtors' homestead as of the filing of the bankruptcy, under Texas state law. The structure has become sufficiently affixed to the real estate to constitute an improvement to the real estate and hence part of the homestead. *Minnehoma Financial Co. v. Ditto,* 566 S.W.2d 354, 357 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.). As of the filing, the debtors both used and intended to use the structure as their home. *Braden Steel Corp. v. McClure,* 603 S.W.2d 288, 292 (Tex.Civ.App.—Amarillo 1980, no writ); *McFarlane v. First Nat. Bank of Orange,* 97 S.W.2d 754 (Tex.Civ.App.—Beaumont 1936, writ ref'd); *Sims v. Beeson,* 545 S.W.2d 262 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). As against the chapter 7 trustee and the unsecured creditors of this estate, then, the debtors may claim the property as exempt under Section 522(b)(2). 11 U.S.C. § 522(b)(2); *In re Hui-*

*zar,* 71 B.R. 826, 829 (Bankr.W.D.Tex. 1987); *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35, 36–37 (1929); *see Gann v. Montgomery,* 210 S.W.2d 255, 259 (Tex.Civ.App.—Ft. Worth 1948, no writ).

This finding does not resolve whether the bankruptcy exemption is also effective against the Bank's lien, however. The court has, by separate order, dismissed the debtors' companion motion to avoid lien for want of jurisdiction, defeating the debtors' attempts to get this court to resolve this very issue. Whether a debtor is entitled to a claimed exemption for purposes of Section 522(b)(2) focuses solely on the debtors' entitlement to that claim under controlling state law as of the date of the filing of the bankruptcy, for purposes of removing it from the chapter 7 trustee's administration. *Huizar,* 71 B.R. at 830; *In re Currie,* 34 B.R. 745, 748 (D.Kan.1983). The court does not (and should not) reach the question whether the debtors had a homestead interest in the structure in 1984, when the debtors gave the Bank a lien it, or whether such a lien is valid notwithstanding the assertion of homestead.[1] *Matter of Zahn,* 452 F.Supp. 1341, 1343 (E.D.Wis.1978), *aff'd,* 605 F.2d 323 (7th Cir.1979), *cert. denied sub nom.,* 444 U.S. 1075, 100 S.Ct. 1022, 62 L.Ed.2d 757 (1980).

For the foregoing reasons, the objection to exemption is overruled, without prejudice to the Bank's asserting the invalidity or unavailability of the exemption claimed by the debtors as a defense to the Bank's lien at some later date in some other forum.

So ORDERED.

---

1. That issue may be controlled by such factual concerns as whether the lien was in place before construction began, whether the lien was in place before the structure became a fixture, and whether, prior to occupancy, the debtors represented (in word or deed) that the structure was not their home. *Miles Homes of Texas, Inc. v. Brubaker,* 649 S.W.2d 791, 793 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (lien *in esse* before property becomes homestead prevails over homestead claim); *Savell v. Flint,* 347 S.W.2d 24, 27 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.) (in interim between declaration of intent to use and actual usage, homestead may be waived by representations relinquishing homestead claim); *Federal Life Ins. Co. v. Martin,* 157 S.W.2d 149, 152 (Tex.Civ.App.—Texarkana 1941, writ ref'd) (debtor may be estopped by affirmative conduct from asserting homestead against an innocent purchaser).