**Myron Lee McFATTER, Appellant,**

v.

**Lowell T. CAGE, Trustee, Appellee.**

**Civil Action No. H–96–1871.
Bankruptcy Case No. 94–47894–G4–7.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 18, 1996.

Sidney L. Farr, Houston, TX, for Myron Lee McFatter.

William Gibbs Harris, Cage Hill & Niehaus, Houston, TX, for Lowell T. Cage, Trustee.

William R. Greendyke, Houston, TX, amicus curiae.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This is an appeal by Debtor, Myron Lee McFatter ("Debtor" or "Appellant"), from Orders entered on October 31, 1995 and April 11, 1996 (Appeal Rec. # 7 and 11) by the Bankruptcy Court denying a claimed homestead exemption on six acres of land (the "Property"). The Property was listed by the Debtor for the first time in schedules filed approximately nine (9) months after commencement of his Chapter 7 bankruptcy case. *See* Debtor's Voluntary Petition in Bankruptcy (Appeal Rec. # 1). Debtor attempted to list the Property as an asset and to claim a homestead exemption in amended Schedules A and C (*see* Original Schedules A and C and Amended Schedules A and C (Appeal Rec. # 2 and 3)) filed in his bankruptcy case only after the Bankruptcy Court indicated that the Trustee would be successful in defeating Debtor's daughter's claim to the Property asserted in contravention of Debtor's 1993 divorce decree holding that Debtor's 1991 "gift deed" to Kelly was a fraud on Debtor's spouse and ordering that the Property should be sold and the proceeds divided equally between the spouses. *See* Trustee's Motion for Summary Judgment and Stipulations regarding the Motion ("Stipulations for Summary Judgment") (Appeal Rec. # 19 and 20).

The Trustee, Lowell T. Cage, objected to Debtor's belated exemption claim. Appeal Rec. # 4. After briefing and submission of documents (primarily from the divorce proceeding), on October 31, 1995, the Bankruptcy Court entered an Order (the "Oct. 31 Order") sustaining the Trustee's objection, denying the amendment, and overruling Debtor's claim of homestead exemption to the Property. Appeal Rec. # 7. In the Oct. 31 Order, the Bankruptcy Court relied on 11 U.S.C. § 522(g) as its sole authority.

Debtor filed a "Motion for New Trial or in the Alternative, for Reconsideration of Order Sustaining Trustee's Objection to Debtor's Claim of Homestead Exemption" ("Motion for New Trial") (Appeal Rec. # 8, 10) as to the October 31, 1995 Order, which the Trustee opposed (Appeal Rec. # 9). On April 11, 1996, the Bankruptcy Court entered an Order denying the Motion for New Trial, and amended and supplemented its findings and conclusions of law. Appeal Rec. # 11. Debtor then appealed to this Court.

The Orders of the Bankruptcy Court are **VACATED** and this case is **REMANDED**.

### PROCEDURAL HISTORY

***Bankruptcy Court Proceedings.***—Debtor started this case on November 18, 1994, by filing a Voluntary Petition under Chapter 7 of the Bankruptcy Code. Debtor's original schedules did not list any real estate and Debtor did not assert any homestead exemp-

tion. *See* Debtor's Schedules A and C (Appeal Rec. # 2).

On October 25, 1994 (about a month before Debtor filed his Petition initiating this bankruptcy case), his daughter, Kelly Beth McFatter ("Kelly"), filed a suit in the state district court of Galveston County, Texas, against Linda McCombs (Debtor's former wife) and others to establish her title to the Property by virtue of a 1991 "gift deed" from her father and to enjoin the named defendants from selling the Property and depriving her of her interest.[1] (Plaintiff's Original Petition, 122nd District Court, Galveston County, Texas, No. 94CV1151, included in the attachments to Notice of Removal, Adversary No. 94–05037) (Appeal Rec. # 17); Stipulations for Summary Judgment (Appeal Rec. # 20), Exh. J. After this bankruptcy case was filed, Kelly removed the state court action to Bankruptcy Court, where it became Adversary No. 94–05037 in her father's bankruptcy case. Notice of Removal, Adversary No. 94–05037 (Appeal Rec. # 17). The Trustee filed a Motion for Summary Judgment in Adversary No. 94–05037 on the ground that the 1993 McFatter Final Decree of Divorce and Findings of Fact and Conclusions of Law (collectively, the "divorce decree") operated as res judicata to bar Kelly's claim to the Property, since the divorce court had already set aside the deed to Kelly. *See* Attachments A and B to Trustee's Motion for Summary Judgment (Appeal Rec. # 19.) The Bankruptcy Court granted the Motion and ordered that the Property be sold in accordance with the 1993 Final Decree of Divorce, and ordered that the proceeds be divided between Debtor and Linda McCombs. Order Granting Trustee's Motion for Summary Judgment, Adv. No. 94–05037 (Appeal Rec. # 23). Neither the Bankruptcy Court Order nor the divorce decree make any mention of homestead rights of either husband or wife.

The divorce court's findings and conclusions included the following: Myron McFatter had conveyed the Property to his daughter Kelly without consideration in 1991 and in fraud of the rights of his wife Linda McCombs and therefore should be set aside. *See* Final Decree of Divorce (Att. A to Trustee's Motion for Summary Judgment) (Appeal Rec. # 19), at 9–10; Findings of Fact and Conclusions of Law in Divorce Proceeding (Att. B to Trustee's Motion for Summary Judgment) (Appeal Rec. # 19), at Finding # 12. The divorce court set aside the 1991 conveyance and appointed a receiver to sell the Property and divide the proceeds between the husband and wife (Exh. B to Trustee's Motion for Summary Judgment) (Appeal Rec. # 19), at Conclusion of Law # 8.[2]

The antagonists in the trespass to try title action were Plaintiff Kelly against Linda McCombs, the receiver (Bonnie Holt), and Myron McFatter. *See* Docket Sheet for Adv. No. 94–05037 (Appeal Rec. # 15).[3] However, since Myron McFatter was a Chapter 7 debtor, and since it appeared to the Trustee that the Property was part of the Debtor McFatter's bankruptcy estate, the Trustee undertook defense of the adversary. *See* Trustee's Original Answer to Plaintiff's Complaint, (Appeal Rec. # 24). Debtor McFatter (and his wife) remained nominally parties to the adversary, but took no part in it, according to the docket sheet and appellate record. *See* Appeal Rec. # 15. *See also* Answer of Linda McCombs (Appeal Rec. # 18); Attachments to Notice of Removal (Appeal Rec. # 17).

There is no evidence that Debtor ever informed the Trustee or creditors of his homestead claim to the Property, although there also is no evidence that Debtor was ever directly asked about his position. At oral argument on the Trustee's Motion for Summary Judgment on June 29, 1995, the

---

1. She claimed the Property was her homestead. *See* Stipulations for Summary Judgment (Appeal Rec. # 20), ¶ j, at 2 and Exh. J.

2. Debtor was ordered to vacate the Property and remove all personal possessions. Final Judgment of Divorce, at 10 (Att. B to Trustee's Motion for Summary Judgment) (Appeal Rec. # 19). The divorce judgment was affirmed by the Four-

teenth Court of Appeals on June 2, 1994. Kelly filed her trespass to try title action on October 25, 1994.

3. Linda McCombs' attorney, Patrick Reilly, also was named as a defendant, apparently so he could be put on notice of any injunction the state court might issue.

Bankruptcy Court indicated it would grant the Trustee's Motion. Hearing Transcript (Appeal Rec. # 25), at 8, 12–13.[4]

Thereafter, on August 2, 1995, Debtor filed Amended Schedules A and C in which he listed the Property as exempt homestead. Debtor's Amended Schedules A and C (Appeal Rec. # 3). The Trustee objected that the amendment was too late, was in bad faith and prejudiced the creditors. Appeal Rec. # 4. At the outset of the hearing on the objection, both parties introduced exhibits. Objection Hearing Transcript ("10/30/95 Tr.") (Appeal Rec. # 21), at 1–2, 14. There was no live testimony at the objection hearing because Bankruptcy Judge, Honorable William B. Greendyke, ruled as a matter of law that 11 U.S.C. § 522(g) barred Debtor from claiming the Property as an exemption. 10/30/95 Tr. (Appeal Rec. # 21), at 14–16; Oct. 31 Order (Appeal Rec. # 7), at 1.

Debtor then filed a Motion for New Trial or in the Alternative for Reconsideration ("Motion for New Trial") pursuant to Bankruptcy Rules 3008 and 9023 (Appeal Rec. # 8), asking the Bankruptcy Court to set aside its order denying the homestead claim as a matter of law and then to grant the Debtor a rehearing to submit testimony and other evidence supporting the Debtor's homestead claim.[5] Although the Bankruptcy Court denied that Motion for New Trial in an Order entered April 11, 1996 ("April 11 Order"), it nevertheless concluded that § 522(g) might not apply to this case so as to bar the exemption as a matter of law. April 11 Order (Appeal Rec. # 11), at 1. Accordingly, in the April 11 Order, the Bankruptcy Court amended and supplemented its earlier findings and conclusions recited from the bench, and then confirmed its earlier order denying the homestead claim. April 11 Order, at 1, 2. In denying Debtor leave to amend, the Bankruptcy Court did not state what authority he

intended to exercise,[6] except to cite *Stinson v. Williamson,* 804 F.2d 1355 (5th Cir.1986).

In the April 11 Order, the Bankruptcy Court held that Debtor had conveyed the Property to his daughter Kelly, in fraud of the rights of his former wife; that the transfer was voided by a Texas family district court prior to the bankruptcy; that no mention of the Property or exemption claim was made by Debtor in this bankruptcy case up through the June 29, 1995 hearing on the Motion for Summary Judgment, at which the Bankruptcy Court indicated he was likely to reject Kelly's attempt to undo the state court's avoidance order; and that only on July 31, 1996 did Debtor amend his schedules to add the Property and to claim the homestead exemption. The Bankruptcy Court then found that the "amended exemption [was] tardy and unseasonable under principles of bankruptcy law." He further found that

> the purported amendment [was] made in bad faith and to work a prejudice on the rights of creditors. Only after it became apparent the trustee would be able to successfully defend the daughter's adversary did the Debtor surface with his homestead claim.

Finally, in the April 11 Order, the Bankruptcy Court explained:

> The trustee has invested time, effort and expense in defense of the daughter's claims, all without the help of the Debtor. The "intent" gleaned from these transactions and inactions is consonant with the intent found by the family district court— fraudulent. Consequently, I conclude the purported amendment should be disallowed. *See Stinson v. Williamson,* 804 F.2d 1355 (5th Cir.1986).

April 11 Order (Appeal Rec. # 11), at 1. The Bankruptcy Court then confirmed its Oct. 31

---

**4.** The Bankruptcy Court confirmed this oral ruling in an order entered August 25, 1995 (Appeal Rec. # 23) after receiving the parties' stipulations as to the divorce case and related proceedings. *See* Stipulations for Summary Judgment (Appeal Rec. # 20).

**5.** Debtor submitted his own affidavit in which he explains his view of the various litigations, and his connection to the land.

**6.** The Bankruptcy Court stated: "Notwithstanding the urging of the trustee to exercise my Section 105 powers, (*Id.*), I conclude the plain wording of Section 522 may not apply under the facts of this dispute."

Order denying the Debtor's claim of homestead exemption on the Property, and supplemented the Oct. 31 Order with the April 11 Order's findings and conclusions.

Debtor complains on appeal, first, that he was precluded from proving his homestead interest in the six acres in issue.[7] Second, Debtor contends that his 1995 amendment to his 1994 property and exemption schedules should not be disallowed for being "tardy and unseasonable" or in "fraud of creditors." Third, Debtor contends there has been no showing that the 1994 amendment to Debtor's exemption schedules to include the Property as homestead was made in "bad faith" and or in "prejudice of the rights of creditors." The Trustee urges affirmance of the Bankruptcy Court's Orders.

### *STANDARD OF REVIEW*

To the extent the Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158, the standard of review of a Bankruptcy Court's factual determinations is set forth in Bankruptcy Rule 8013:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The burden is on the appellant to show a reviewing court that a factual finding is "clearly erroneous." *In Matter of Fairchild Aircraft Corp.,* 6 F.3d 1119, 1128 (5th Cir. 1993). Reversal is proper only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of Fabricators, Inc.,* 926 F.2d 1458 (5th Cir. 1991); *In re Multiponics, Inc.,* 622 F.2d 709, 723 (5th Cir.1980) (citation omitted). "Any conclusion of law, of course, is subject to *de novo* review." *In re Jordan,* 927 F.2d 221, 224 (5th Cir.1991), *overruled on other grounds, Coston v. Malvern,* 991 F.2d 257 (5th Cir.1993). When reviewing mixed questions of law and fact, the Court must give deference to the factual determinations made by the Bankruptcy Court unless clearly erroneous, but the Court "must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *In re Bufkin Bros., Inc.,* 757 F.2d 1573, 1577–78 (5th Cir. 1985) (citation omitted).

### *DISCUSSION*

#### A. *Section 522(g)*

■ In the Bankruptcy Court's April 11 Order, it stated that 11 U.S.C. § 522(g) "may not apply under the facts of this dispute." No party meaningfully argues to the contrary. This Court agrees with the Bankruptcy Court; § 522(g) does not apply here. The Trustee did not avoid a transfer of the Property to Debtor's daughter by the Debtor under any of the statutory provisions enumerated in § 522(g) (*i.e.,* §§ 510(c)(2), 542, 543, 550, 551, or 553). The transfer actually was avoided by the divorce court prior to the filing of Debtor's Chapter 7 Petition in Bankruptcy. The Trustee obtained an order from the Bankruptcy Court that enforced the divorce court's ruling based solely on res judicata principles. *See* Order Granting Trustee Summary Judgment (Appeal Rec. # 23).

#### B. *"Bad Faith" and "Prejudice to the Creditors"*

■ Appellant contends that the only issue in this proceeding is whether he, as a Chapter 7 debtor, is entitled to claim the Property as exempt property, his homestead, in this bankruptcy. "Motion for New Trial" (Appeal Rec. # 8), at 5. The Court disagrees. The central issue is whether Debtor should be permitted to amend his schedules to include the Property he has known about at all times and be permitted to claim a homestead exemption after the Trustee has spent time and resources to clear title to the Property. Only if such amendment is allowed is Debtor entitled to an opportunity to establish his homestead claim.

---

7. There is a factual dispute between the parties as to whether the homestead is in an urban or rural area, and thus the size of the permissible homestead acreage. The Bankruptcy Court did not address this issue in light of its ruling that the claim of homestead was tardy and in bad faith. The Court therefore does not reach this issue.

*The Legal Standard.*—Bankruptcy Rule 1009(a) provides that a debtor may amend his schedules of assets and exemptions *"as a matter of course at any time* before the case is closed." Bankruptcy Rule 1009(a) (italics added). "The law in this circuit at least since 1969 has been to follow the general rule of liberal amendment of exemption claims." *Williamson,* 804 F.2d at 1358, citing *Thompson v. Powell,* 413 F.2d 276, 277 (5th Cir. 1969). The Fifth Circuit in *Williamson* adopted the Eleventh Circuit's rule. *Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (5th Cir.1982). In *Doan,* the Eleventh Circuit refused to find "intentional or fraudulent concealment, or even bad faith" in regard to debtors' failure to list a tax refund on their schedules since the existence of a potential refund was known to the creditors and was mentioned by the debtors at a meeting of creditors. *See In re Doan,* 672 F.2d at 832–33.

The parties cite the Court to no authorities other than *Williamson* in making their arguments regarding the propriety of amendment by the Debtor to his schedules as requested. The Court's research reveals that the terms "bad faith" or "prejudice to the creditors" are terms which are difficult to satisfy and require factual analysis. *See, e.g., Stinson v. Williamson,* 804 F.2d 1355, 1358 (5th Cir. 1986); *Hardage v. Herring National Bank,* 837 F.2d 1319, 1324 (5th Cir.1988); *Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833–34 (11th Cir.1982); *Huizar v. Bank of Robstown,* 71 B.R. 826, 829 (Bankr.W.D.Tex. 1987). *Compare Momentum Manufacturing Corp. v. Employee Creditors' Committee (In re Momentum Manufacturing Corp.),* 25 F.3d 1132, 1135 (2nd Cir.1994).

■ The Court concludes that "bad faith" means more than a debtor's initial silence about the existence of an asset or its exempt status, when the creditors are aware of the property's existence. *See, e.g., In re Doan, supra; Huizar, supra; cf. Hardage, supra.* Implicitly, under Fifth Circuit analysis, bad faith generally requires concealment of an asset or an exemption of which the creditors have no knowledge and thus no opportunity to investigate. It requires something more than a mistaken failure to list an asset or to claim an exemption. In sum, to have "bad faith," there must be some form of deception. In this Circuit, to date, no court has found bad faith in a reported decision.[8]

■ To prevail on the "prejudice to the creditors" prong of the *Williamson* formulation of the standard, it is not enough that the Trustee needs to show that the creditors would receive a lower distribution from Debtor's estate if Debtor's newly asserted exemption were sustained. Prejudice involves creditors (and presumably the Trustee on their behalf) adopting a litigation position to their detriment in reliance upon conduct of the debtor. *See* authorities cited *supra.*

*Application to the Case at Bar.*—Here, Debtor McFatter did not conceal the existence of the Property as an asset of the estate. The Trustee was aware of the Property despite Debtor's failure to list it on his original Schedules A and C. The only behavior by Debtor that the Bankruptcy Court relied upon to conclude Debtor acted in bad faith seems to have been Debtor's silence as to his intent concerning the asset's classification as homestead. *See* April 11 Order (Appeal Rec. # 11), at 1. Debtor, in his Motion for New Trial (Appeal Rec. # 8), attempted to explain his silence as to the asset and homestead questions.[9] Debtor argued to the Bankruptcy Court and now urges on appeal that, although he lived at the Property during all times material to this case, he did not believe he had an interest in the Property as against his daughter to whom he transferred the Property by "gift deed" in 1991. His

---

8. *Compare In re Momentum,* 25 F.3d at 1135, the Second Circuit held that equitable estoppel prevented the debtor from denying severance pay claims after the plan of reorganization that included such payments was approved by the creditors and employees.

9. Debtor's Motion for New Trial indicates the Debtor may have been counseled by his attorney to take the course he did since he took the

position in the litigation with his wife that his daughter owned the Property. *See* Motion for New Trial, ¶¶ 8, 9, at 4–5. Debtor submitted an unsworn declaration that detailed his connection to the Property but failed to address reasons for his silence. *Id.* (attachment); *see generally* Debtor's Rejoinder to Trustee's Response to Debtor's Motion for New Trial (Appeal Rec. # 10).

view apparently changed only when it appeared likely that the Bankruptcy Court would conclude that Debtor's interest in the asset was superior to his daughter's. Debtor argues also that his daughter's rights were not adjudicated in the divorce proceeding, since she was not a party. *See generally* Appeal Rec. # 8, 10. He urges that the homestead issue was not germane to the divorce proceeding, since the Property was to be sold and the proceeds divided irrespective of any homestead claim. Finally, it is noted Debtor had not answered the petition in the title litigation and thus had not taken a detailed formal position in that suit. *See* Notice of Removal Attachments and Trustee's Answer (Appeal Rec. # 17, 18, 24).

Debtor's unsworn declaration and arguments create a factual dispute as to the reasons for Debtor's initial failure to present the homestead issue and the nine month delay in doing so. No hearing at which testimony was received was held, either before the Bankruptcy Court originally ruled to put his position on the record or thereafter. While it is suspicious that Debtor failed to include any explanation in the declaration he presented with his Motion for New Trial and Debtor's conduct and reasoning now given appear strained, the record is insufficient to support the Bankruptcy Court's finding that Debtor had fraudulent intent as to the creditors or acted in bad faith, given the difficult standard set forth by the reported cases necessary to justify a bankruptcy court's denial of amendment of bankruptcy schedules by a debtor.

The Bankruptcy Court in essence relied solely on the existence of a gift by Debtor to his daughter in 1991 and his silence as to his claim of homestead as to the Property while the title litigation was pending. Rather than making independent findings based on testimony and an assessment of Debtor's (and

possibly his counsel's) explanations, the Bankruptcy Court adopted the divorce court's conclusion that Debtor committed a "fraud as against his former spouse." Delay and these grounds alone are not sufficient to establish bad faith as to creditors in this estate.[10] *See generally* Bankr.R. 1009(a); *e.g., Williamson, supra; In re Doan, supra.* For instance, there is nothing of record as to whether the Trustee ever directly inquired of the Debtor about his intentions if the Trustee were successful in the title litigation. There is nothing about the circumstances of the Trustee assuming the defense of the title action. These matters bear on the Debtor's good or bad faith in allowing (or conceivably encouraging) the Trustee to oppose Debtor's daughter's title litigation.

Alternatively, the Bankruptcy Court held that denial of the amendment was justified because the "amendment [was] made ... to work a prejudice on the rights of creditors." April 11 Order (Appeal Rec. # 11). The "prejudice to the creditors" issue also is a close one on the facts of this case. However, the Bankruptcy Court has provided too sparse a record to justify the extraordinary relief he granted to the Trustee. The Bankruptcy Court focussed on Debtor's timing for his amendments, not what efforts or resources the Trustee devoted to this litigation, or what the Trustee did based on Debtor's silence that the Trustee *would not otherwise have done.* The extent of material prejudice to the creditors cannot be ascertained from this record.[11]

This Court accords significant deference to the Bankruptcy Court's rulings under an abuse of discretion standard. However, the record is incomplete as to the Bankruptcy Court's specific factual basis for its seminal conclusions. Therefore, this case must be remanded for further proceedings. In addition, while on remand, the Bankruptcy Court,

---

10. The Trustee argued more conduct by the Debtor justified denial of an amendment but the Bankruptcy Court did not incorporate those points into his findings; there is no way to know if these arguments formed a basis for the decision. For instance, the Trustee complained that Debtor was disingenuous when he raised a question about whether the transfer to his daughter was a gift for no consideration.

11. For instance, there is no admissible evidence that the Trustee acted in reliance upon the Debtor's silence as to his intent to claim the Property as homestead or that the Trustee would not have taken the same course had Debtor initially asserted the exemption in the hopes that the Trustee would prevail to defeat Debtor's homestead exemption.

**510**

if still relevant after the further proceedings, should clarify the meaning of its reference to "principles of bankruptcy law" in justifying a conclusion that the amended exemption schedule was "tardy and unseasonable" in the April 11 Order.

Finally, this Court does not intend to imply any opinion that the Bankruptcy Court necessarily reached the wrong outcome, or that the outcome should necessarily change after a hearing on this matter.[12] It is therefore

**ORDERED** that the October 31 and April 11 Orders of the Bankruptcy Court are **VACATED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

---

**12.** The Court is aware there also is an issue as to whether the Property, even if homestead, is rural or urban property. Equity may suggest that, even if the Property is found to be homestead, the Trustee should receive a fee on the Property or the creditors should benefit to some extent from the proceeds of the Property.