IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2008

Charles R. Fulbruge III
Clerk

No. 06-20234

In The Matter Of:  ANTHONY DELL UNRUH; SUE NELL UNRUH

Debtors

-----------------------------------------------------------------------

ANTHONY DELL UNRUH; SUE NELL UNRUH

Appellants

v.

RODNEY TOW, Ch 7 Trustee

Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Anthony and Sue Unruh moved in the bankruptcy court to amend their exemptions to claim Texas state exemptions instead of the federal exemptions they had claimed under the Bankruptcy Code.  The court denied their motion, finding bad faith and prejudice to the creditors, largely based on the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

understatement and concealment of the value of their assets. The district court affirmed. Finding no error, we AFFIRM.

I.

The debtors, Anthony and Sue Unruh, purchased approximately 70 acres in Dickinson, Texas in August 2002 for $197,800. They built a home on the property that November for $178,190. The Unruhs' total investment in the property, including other minor improvements, was around $386,370. First Community Bank provided the Unruhs' construction loan and arranged permanent financing for the property. In the process, First Community obtained an appraisal for the house and the surrounding 30 acres at a value of $350,000. First Community provided financing for the remaining 40 acres of the property but sought another lender to finance the house and 30 acres. Bank of America provided the financing for the house and surrounding 30 acres in a separate loan, closing on April 19, 2004.[1]

On April 22, 2004, the Unruhs filed a voluntary petition for bankruptcy under chapter 7. The Unruhs listed the entire 70 acres, including their house, on Schedule A for real property at a current market value of $330,000. They listed secured claims on the property of $326,832. On Schedule C, the Unruhs claimed federal exemptions under 11 U.S.C. § 522(b)(1), claiming an exemption for their equity in the property under the homestead exemption. They used part of the remaining homestead exemption to exempt other property under the wildcard provision of 11 U.S.C. § 522(d)(5). Listed in the other claimed property was the Unruhs' 100 percent interest in their plastic fabrication company, Nell International. Nell International's value was listed at $1000, the par value of the stock.

---

[1] At the time of the Unruhs' bankruptcy filing, the secured debt held by Bank of America totaled $255,800 and the secured debt held by First Community totaled $71,032. Together, the total debt secured by the property was $326,832.

On December 23, 2004, the trustee applied to have a realtor sell the homestead property. The same day, the Unruhs filed an Amended Schedule C, listing the same values for the homestead property and exemption and continuing to exempt Nell International. On January 19, 2005, the trustee filed an Objection to Debtor's Claim of Exemptions. On Janurary 21, the Unruhs filed a Motion for Abandonment of Homestead or in the Alternative Request for Leave to Amend Exemptions. The trustee then filed an objection to that motion. The realtor obtained an offer, dated February 7, from another trustee to purchase the property for $700,000. The offer did not close. On February 9, the Unruhs filed a second Amended Schedule C listing the homestead property's market value at $700,000, claiming an exemption for 100 percent under Texas state law exemptions, and no longer claiming an exemption for their interest in Nell International. The trustee filed another objection to this claim of exemptions.

The bankruptcy court denied the Unruhs' motion to abandon the homestead or amend exemptions. The bankruptcy court found that the Unruhs intentionally undervalued their property, that their conduct constituted bad faith, and that allowing the amendment would prejudice the Unruhs' creditors. The Unruhs appealed to the district court. The district court entered a final judgment affirming on January 30, 2006. From this judgment, the Unruhs appeal pro se.

II.

The Unruhs contend that the bankruptcy court erred by denying their motion to amend their exemptions. They argue that the bankruptcy court's finding of bad faith is not supported by the evidence and that allowing them to amend their exemptions would not prejudice their creditors.

III.

Our review of the record is fully convincing that the bankruptcy court did not commit clear error in finding that the Unruhs completed their exemption

schedules in bad faith. The Unruhs' motion to amend was therefore properly denied. Because the bankruptcy court's finding of bad faith is sufficient to deny the Unruhs' motion to amend, we do not address the finding that creditors would be prejudiced.

In reviewing cases originating in bankruptcy, we perform the same function as the district court: findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. Barron v. Countryman, 432 F.3d 590, 594 (5th Cir. 2005). The Supreme Court has stated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Strict application of the clearly erroneous standard is appropriate where the district court has affirmed the bankruptcy court's findings of fact. In re Young, 995 F.2d 547, 548 (5th Cir. 1993). We are particularly mindful that the bankruptcy court has the opportunity to judge the credibility of the witnesses. In re Bradley, 501 F.3d 421, 434 (5th Cir. 2007). "Moreover, when the bankruptcy court's weighing of the evidence is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently." Id.

Amendments to exemptions are generally allowed liberally under Federal Rule of Bankruptcy Procedure 1009. However, leave to amend may be denied "if there is a showing of the debtor's bad faith or of prejudice to the creditors." In re Williamson, 804 F.2d 1355, 1358 (5th Cir. 1986). A finding of bad faith requires some form of deception, such as an effort to mislead creditors or to conceal assets, as opposed to a mere mistaken failure to list an asset or to claim an exemption. See McFatter v. Cage, 204 B.R. 503, 508 (S.D. Tex. 1996).

The Unruhs incorrectly contend that nothing short of concealment of an asset itself may constitute bad faith. Bad faith may also be shown by a gross

and deliberate understatement of the value of an asset, made in an attempt to deceive creditors or the bankruptcy court. See In re Hannigan, 409 F.3d 480, 484 (1st Cir. 2005) (affirming a finding of bad faith where debtor had intentionally undervalued property by listing value for only one of two parcels); In re Bauer, 298 B.R. 353, 356 (8th Cir. BAP 2003) (affirming a finding of bad faith where debtors substantially undervalued their home in schedules).

In this case, the bankruptcy court found that the Unruhs deliberately failed to disclose the accurate value of their real property; stated another way, the Unruhs filed schedules under oath that deliberately and significantly understated the value of their assets. The court found that the Unruhs' testimony regarding their exemptions lacked credibility on the whole. Without making a finding of the actual value of the property at issue, the court found that the Unruhs knew from the beginning of the case that their property was significantly more valuable than they listed on their schedules. The court found credible evidence that the Unruhs had been provided with a final appraisal indicating the higher value of the property around the time of the refinancing of the property, which occurred only a few days before the Unruhs filed for bankruptcy protection. In sum, the bankruptcy court found, on the totality of the circumstances, that the Unruhs "1) failed to answer the Trustee's questions honestly at the § 341 meeting, 2) failed to correct the valuation in their first amended Schedule C, 3) waited nine months before providing an accurate Schedule C, and 4) gave inconsistent and perhaps untruthful testimony to the Court." The court therefore found that the Unruhs had engaged in active concealment of assets of the estate.

The Unruhs contend that the bankruptcy court erred by basing its finding of bad faith on appraisals that were never entered into evidence or entered for purposes other than to show the actual value of the property. Although the court did list several appraisals in its opinion, it did not make any finding of the actual

value of the property. It found instead, based on the totality of the evidence, including the credibility of the Unruhs' testimony, that the Unruhs knew at the time they completed their schedules that the value of the property was substantially higher than the value they chose to list.

IV.

In conclusion, we cannot say that the court was mistaken in its factual findings. Substantial evidence was presented that, at the time they completed their initial schedules, the Unruhs were aware of appraisals and other indications that their property was worth significantly more than they listed. The bankruptcy court's finding that the Unruhs engaged in active concealment of assets of the estate is supportable in the light of the evidence, taken as a whole. We therefore will not disturb the bankruptcy court's finding.

Based on the finding that the Unruhs engaged in deception and active concealment of the value of their real property, which constituted bad faith, the judgments of the bankruptcy and district courts denying the Unruhs' motion to amend their exemptions are

AFFIRMED.