In re CLOTHES, INC., d/b/a Jay's Mens Shop and Mr. D's, Debtor.

Phillip D. ARMSTRONG, Trustee of the Estate of Clothes, Inc., d/b/a Jay's Mens Shop and Mr. D's, Appellant,

v.

FIRST NATIONAL BANK, MINOT, NORTH DAKOTA; Elliott Obedin; Gregory C. DeMakis; C. Morris Anderson; and Young America, Inc., Appellees.

Bankruptcy No. 81–05004.

Civ. No. A4–83–142.

United States District Court,
D. North Dakota,
Northwestern Division.

June 14, 1984.

---

998

Phillip D. Armstrong, Minot, N.D., for appellant.

Michael G. Sturdevant, Minot, N.D., for appellees.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

The trustee of the bankrupt estate has appealed the decision of the bankruptcy court, the Honorable Harold O. Bullis (since deceased) presiding. The trustee is concerned that the First National Bank of Minot may have received an unlawful preference. The bank held a first security lien on the stock and fixtures of Clothes, Inc. —a men's clothing store which for a time had two outlets in Minot, North Dakota: Mr. D's and Jay's Mens Store.

The trustee seeks to set aside a security interest held by the First National Bank, and thus to gather the assets for the benefit of various unsecured creditors. While the trustee attacks the security position from several points, his basic claims are three: 1) that the bank violated banking procedure and committed fraud and therefore the transaction is void in the sense

that the courts will not assist the bank to protect its security interest; 2) that Young America and the bankrupt committed fraud on the general creditors; and 3) that in any event under doctrines of marshalling assets the bank should release its claim under the security interests and, instead, look to two individual guarantors to collect its claim, thus freeing the secured assets to pay unsecured creditors.

Prior to the debacle created by congressional failure to meet the constitutional issue raised by the *Northern Pipeline* case,[1] it was well established doctrine that in reviewing a bankruptcy court decision the district court was governed by these principles:

> Findings of fact made in a bankruptcy proceeding will not be set aside unless clearly erroneous.... A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake had been committed." ... This rigorous standard does not constrain appellate scrutiny of conclusions of law, which are subject to plenary review.... When a finding of fact is premised on an improper legal standard, or a proper one improperly implied, that finding loses the insulation of the clearly erroneous rule....

*In re Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 209 (5th Cir. 1983) (citations omitted); *see also* Bankruptcy Rules 8013 and 7052.

Due to the *Northern Pipeline* decision, many district courts, including this district, adopted temporary bankruptcy rules which articulated a more broad standard of review:

> In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, modify, in whole or in part, the order or judgment of the bankruptcy

**1.** *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

judge, and need give no deference to the findings of the bankruptcy judge.

*In re Adoption of an Emergency Resolution Relating to Bankruptcy,* Order of Chief Judge Benson and Judge Van Sickle (D.N.D. Apr. 4, 1984).[2]

Since the adoption of the temporary local rules, the Supreme Court approved new bankruptcy rules and Congress, by its inaction, allowed the rules to become effective. *See generally* 11 U.S.C.A. Rules preface at v–vi (West 1984). These new rules require the district courts to apply the clearly erroneous standard. Bankruptcy Rule 8013 (effective August 1, 1983). And one federal circuit court has ruled that the temporary local rules have been superseded by the new bankruptcy rules. *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983).[3]

It is apparent that the Eighth Circuit has not yet addressed the issue of what standard of review the district court must apply given the *Northern Pipeline* decision and new Rule 8013. It has, however, continued to apply the clearly erroneous standard.[4]

Nor does it appear that any court has decided whether Rule 8013 is constitutional in light of the *Northern Pipeline* decision.

Since a) the new bankruptcy rules were promulgated by the United States Supreme Court after the *Northern Pipeline* decision[5] (and given congressional blessing *sub silentio*) and b) the Eighth Circuit has approved the use of the clearly erroneous standard of review by the district courts subsequent to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* and given the persuasive reasoning contained in *Morrissey,* I hold that the clearly erroneous standard of review applies in all bankruptcy appeals before this court.[6]

Morris Anderson and his son-in-law, Greg DeMakis, purchased together a retail clothing business and organized it as Clothes, Inc., with each person owning or controlling one-half of the capital stock. It is apparent that Morris Anderson made the company's line of credit available; and Greg DeMakis managed the business. The First National Bank in Minot furnished the

**2.** This order was derived from the Model Emergency Bankruptcy Rule for the Continued Operation of Bankruptcy Court System prepared by the Director of the Administrative Office of the United States Courts. *See* 11 U.S.C.A.App. at 377–80 (West 1984). The Eighth Circuit has noted that "[t]hese rules generally have been found constitutional." *Lindsey v. Ipock,* 732 F.2d 619, 624 (8th Cir.1984) (citing *Oklahoma Health Serv. Fed. Credit Union v. Webb,* 726 F.2d 624, 625 (10th Cir.1984); *In re Kaiser,* 722 F.2d 1574, 1581 (2d Cir.1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 263 (6th Cir.1983)).

**3.** *But see* 11 U.S.C.A.App. at 381, W. Foley, *Advisory as to Conflict in Rules* (Aug. 3, 1983) (letter from Director stating that the Model Rule "should continue to be followed until ... the effective date of remedial legislation responding to the Supreme Court's decision...."); *1616 Reminc Ltd. Partnership v. Atchison & Keller Co.,* 704 F.2d 1313 (4th Cir.1983). The *Reminc* decision adopted the Model Rule standard "at least until such time as Congress may prescribe a different scope of review." *Id.* at 1319.

**4.** *See, e.g., Lovell v. Mixon,* 719 F.2d 1373, 1379 (8th Cir.1983) ("[The bankruptcy court's] finding is not clearly erroneous and therefore we affirm the judgment of the district court affirming the decision of the bankruptcy judge."); *Clay v. Traders Bank,* 708 F.2d 1347, 1350–51 (8th Cir.1983); *In re Schwen's, Inc.,* 693 F.2d 48,

49 (8th Cir.1982); *see also In re Walker,* 726 F.2d 452, 454 (8th Cir.1984) ("The question is one of fact to be decided in the first instance by the bankruptcy court, and we find a remand to the bankruptcy court for further findings of fact and conclusions of law is required."); *Kressel v. Kotts,* 34 B.R. 388, 391 (D.C.D.Minn.1983) (MacLaughlin, J., citing *Morrissey* and applying the clearly erroneous standard of review).

**5.** Of course, "[t]he fact that [the Supreme Court] promulgated the rules as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency." *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946).

**6.** If *Morrissey* is correct, only one alternative seems available: the district court could make an initial finding in each case as to whether the bankruptcy judge acted, in regards to the issue being appealed, as an Article I judge or an Article III judge. If the bankruptcy judge acted in an Article I capacity, the clearly erroneous standard would apply; otherwise, the court would apply something approaching a full review. *Cf.* Model Rule e(2)(B), 11 U.S.C.A.App. at 380.

I note, however, that the outcome would be the same in this case no matter which rule is applied.

line of credit, and Morris Anderson was at all relevant times a director of that bank.

The bank secured its advances by liens on the stock and on the fixtures. In the fall of 1980, after Clothes, Inc. had developed a history of more than six months of increasing failure to handle its accounts payable, the bank foreclosed its security interest by action brought in the state court of North Dakota. Before sale an accounting firm took an inventory (stock for resale at cost) and established a value including fixtures of $238,000. Young America Inc. bought the entire inventory including fixtures of the two stores for $156,000. As the condition. of Clothes, Inc. had become more shaky, the bank had required Morris Anderson and Greg DeMakis to give their guarantee for about $110,000 of the corporate debt. But the guarantors did not transfer any assets to the corporation to bolster its financial structure. Their guaranties were only additional protection for the bank.

I.

 The trustee argued that procedural misconduct, coupled with actual fraud, voided any claim the bank had to the security asset, and thus the asset or proceeds from it should go over to the trustee to satisfy the general creditors.

12 U.S.C., which governs the conduct of banks that are members of the Federal Reserve System, does not give standing to the creditors, or the trustee to exercise the powers vested in the Federal Reserve System. *See* 12 U.S.C. § 504(a). And even if that were so, by the time § 504(a) became effective law, March 10, 1979, the principal indebtedness of Clothes, Inc., had already been established. Nor do the penalties for violation of 12 U.S.C. § 504(a) provide that failure to comply with the statute makes the loan instruments unenforceable.

Nor was the bank an "insider" as defined by 11 U.S.C. 101(25). It exercised no control over Clothes, Inc., its manager, or its policies, except for its contract right to require that the notes and security instruments be honored according to their terms. Thus while the extension of credit through the bank director, Anderson, on his motion, was not proper procedure, the loan is not voidable in favor of the general creditors under 12 U.S.C. § 375b. The bank also covered overdrafts, but the covering of overdrafts is a courtesy extended to all depositors where adequate security exists.

And the bank was oversecured by virtue of its individual guarantees for more than 90 days prior to the filing of the involuntary petition (*see* 11 U.S.C. § 547 for preferential transfer period).

Nor is the decision to seek a receivership sale by the local state district court in any manner a badge of fraud. This was a normal commercial foreclosure where the formal procedure would protect purchasers from an overly extended business. *See* N.D.C.C. § 41–09–53(2).

The bank did honor outstanding letters of credit, well within the scope of its security, and under circumstances where the debtor received the goods for resale. But that is no adequate basis to find that the bank's action was intended to hinder, delay, or defraud the creditors.

II

 The trustee argues that Young America Inc. holds the proceeds in constructive trust because of its lack of good faith in the purchase at the receivership proceeding.

Young America was properly dismissed from the action. It came in, in the fall of the year, to liquidate a complete line of stock, the current portion of which had been purchased several months earlier. Its actions to keep itself informed of a competitor's potential, and its review of the assets before purchase are simply evidence of good business practice. The purchase price was 65% of the established value. And that 35% difference had to fund costs of retail sale, loss on salvage of the fixtures (which had to be abandoned or moved), seasonal obsolescence of the goods retailed, costs of financing, and risk and management profit.

The liquidation sale by Young America was open and notorious; creditors who made inquiries were informed. There has been no proof of fraud under N.D.C.C. 13-01-06. And this analysis is equally applicable to the claim of actual fraud under 11 U.S.C. § 548(a)(1), or constructive fraud under 11 U.S.C. § 548(a)(2).

### III

The trustee also claims that under doctrines of marshalling of assets the bank had an obligation to the unsecured creditors to go against the guarantors and leave the security assets for the general creditors. But the assets to be marshalled are those of the debtor. The North Dakota statute on marshalling of assets is taken from the Code of California. It is found at N.D.C.C. § 13-01-04. For a case in point see *Victor Gruen Associates, Inc. v. Glass,* 338 F.2d 826 (9th Cir.1964). *See also Union National Bank v. Milburn & Stoddard Co.,* 7 N.D. 201, 212-14, 73 N.W. 527, 530-31 (1897). The trustee seeks to require that the assets of the guarantors be marshalled over those of the debtor.

In any event under commercial law rules, the guarantor, upon payment of the guaranty, steps into the creditor's shoes. *See* 11 U.S.C. § 509(a). So marshalling, as the trustee would have it done, is of no benefit to the unsecured creditors.

There are other claims (denial of a motion for delay, denial of a motion to amend the pleadings to conform to the proof), but they are of no merit; and the three areas above discussed must all be resolved against the trustee.

The order of the bankruptcy judge is affirmed. The appeal is dismissed on its merits.