In re Clinton W. MURCHISON, Jr. and Corland Corporation, Debtors.

D.M. LYNN, Plan Trustee for the Estates of Clinton W. Murchison, Jr., and Corland Corporation, and Duke Salisbury, Estate Trustee for the Estates of Clinton W. Murchison, Jr., and Corland Corporation, Plaintiffs,

v.

CONTINENTAL BANK, N.A., Defendant.

Bankruptcy Nos. 385–30266–HCA–11, 385–31014–HCA–11.
Adv. No. 385–3997.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 3, 1993.

Russell L. Munsch, Munsch Hardt Kopf Harr & Dinan, P.C., Dallas, TX, Franklin P. Auwater, Mayer, Brown & Platt, Chicago, IL, for defendant.

David W. Elrod, Calhoun & Stacy, Vernon O. Teofan, Jenkens & Gilchrist, P.C., Dallas, TX, for plaintiffs.

## AMENDED MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT 1 OF PLAINTIFFS' SECOND AMENDED COMPLAINT

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for hearing on April 1, 1993, the motion of defendant Continental Bank, N.A. ("Continental Bank") for partial summary judgment on Count 1 of the Plaintiffs' Second Amended Complaint ("Complaint") in the above-captioned adversary proceeding ("Adversary"). Counsel for all parties to the Adversary submitted extensive briefs, appeared at the hearing, and submitted oral arguments.

The Plan Trustee and the Estate Trustee ("Plaintiffs") for the estate of debtor Clinton W. Murchison seek to recover, under various legal theories described in the Complaint, more than $20 million in cash and receivables transferred to Continental Bank in May and June of 1984. Count 1 of the Complaint alleges that the transfers, which occurred more than 90 days but less than one year before the filing of Murchison's bankruptcy petition, were voidable preferences under 11 U.S.C. § 547(b) because Continental Bank was an insider of Murchison.[1]

The Court has jurisdiction over the Adversary under 28 U.S.C. §§ 1334 and 157(b)(2)(F) and -(O) and 11 U.S.C. § 547.

In conjunction with its summary judgment motion, Continental Bank has produced evidence that it was not an insider of Murchison at the time of the 1984 transfers. The Plaintiffs have failed to show, in response, the existence of any genuine issue of material fact regarding Continental Bank's insider status. After viewing the summary judgment evidence in the light most favorable to the Plaintiffs, the Court concludes that Continental Bank's motion for partial summary judgment will be granted.

### Factual Background

Clint Murchison, in partnership with his brother John, was a prominent Dallas businessman with interests in a wide variety of ventures, including the original National Football League franchise for the Dallas Cowboys. After John died in 1979, Clint's financial troubles mounted and his health declined. Creditors filed an involuntary Chapter 11 petition against Clint on February 7, 1985. Clint died in 1987.

In May 1984, less than a year before Clint's bankruptcy petition was filed, the Murchison Brothers partnership (then in the process of liquidation) sold the Dallas Cowboys franchise to H.R. "Bum" Bright. The partnership then transferred Clint's share of the sale proceeds, $13.9 million, to Continental Bank pursuant to a 1981 security agreement in which Clint had pledged to Continental Bank all distributions due to him from the partnership liquidation. Along with the $13.9 million cash, Continental Bank received 260,625 shares of Dallas Cowboys common stock and an assignment of accounts receivable valued at about $6.8 million. A few weeks later, the District Court of Dallas County ordered the transfer of another $2.7 million cash (which the Murchison Brothers partnership had deposited in that court's registry in connec-

---

**1.** Count 2 of the Complaint alleges that the 1984 transfers are recoverable from Continental Bank as the initial transferee of a preferential payment benefitting Topcor, Inc., Murchison's co-guarantor. In other words, Count 2 advances a *Deprizio*-type avoidance theory. *See Levit v. Ingersoll Rand Financial Corporation (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1989).

The motion for partial summary judgment under consideration in this Memorandum Opinion does not address the *Deprizio* allegations of Count 2. Continental Bank has attacked only Count 1's contention that Continental Bank was an insider of Murchison. The Court expresses no opinion whatsoever on the merits of Count 2.

tion with a lawsuit in which Clint was a defendant) to Continental Bank. All of the distributions received by Continental Bank from Murchison Brothers were the property of Murchison.

### Continental Bank's Motion for Partial Summary Judgment

Count 1 of the Plaintiffs' Complaint seeks to recover, for the creditors of Clint Murchison's estate, the above-described transfers as preferences paid to a creditor, Continental Bank, under 11 U.S.C. § 547(b).[2] Continental Bank has moved for partial summary judgment to dismiss Count 1 on the ground that Continental Bank was not an "insider" of Murchison at the time of the transfers, which occurred more than 90 days but less than one year before the filing of Murchison's bankruptcy petition.

*Lender banks as "insiders" of debtors under 11 U.S.C. § 547(b)*

Continental Bank argues that "a bank does not become an insider within the meaning of § 547(b)(4)(B) unless the bank controls the activities of the borrower to such an extent that the borrower becomes a mere instrumentality of the bank." Defendant's Memorandum 3. The Plaintiffs respond that Continental Bank was an insider of Murchison if it had "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Plaintiffs' Response 16. The question, then, is: What must a plaintiff prove, under Fifth Circuit law, to show that a lender bank is an "insider" of a debtor

under § 547(b)? Must the plaintiff prove that the bank controlled the debtor's actions? Or is it enough to show that the bank and the debtor had a "close relationship" that could have led to the bank's gaining undue influence over the debtor?

For an individual debtor such as Murchison, the Bankruptcy Code says "insiders" may be, *inter alia*, the debtor's relatives, his partners, or corporations that the debtor controls. *See* 11 U.S.C. 101(31)(A). However, the statutory definition is not limiting and must be flexibly applied on a case-by-case basis. *Wilson v. Huffman (Matter of Missionary Baptist Foundation of America, Inc.)*, 712 F.2d 206, 210 (5th Cir.1983). A determination of insider status is a question of fact. *Id.* at 210.

The Court of Appeals for the Fifth Circuit has considered the issue of "insider" status only once in the context of an avoidance action in bankruptcy. That case, *Browning Interests v. Allison (Matter of Holloway)*, 955 F.2d 1008 (5th Cir.1992), offered two factors to consider in determining whether "insider" status exists under 11 U.S.C. § 101(31):

(1) The closeness of the relationship between the transferee and the debtor; and

(2) Whether the transactions were conducted at arm's length.

*Id.* at 1011. The opinion also cites the legislative history of § 101(31), which defines an insider as "a person or entity with 'a sufficiently close relationship with the debtor that his conduct is made subject to

---

**2.** As explained in note 1, *supra,* Count 2 of the Complaint asserts that the transfers were made for the benefit of a different creditor, namely Topcor, Inc., Murchison's co-guarantor. Neither Continental Bank's motion for partial summary judgment nor this opinion addresses the allegations of Count 2.

Section 547(b) reads:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

  (1) to or for the benefit of a creditor;

  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

  (3) made while the debtor was insolvent;

  (4) made—

  (A) on or within 90 days before the date of the filing of the petition; or

  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

  (5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under Chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

closer scrutiny than those dealing at arm's length with the debtor.'" *Id.* at 1010–11, quoting S.Rep. No. 95–989, 95th Cong.2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5810. The *Holloway* court found that the debtor's ex-wife was an "insider," and that a transfer to her could be voidable as a fraudulent conveyance, where the debtor and the ex-wife had three children in common, testified that they were trying to protect each other, and engaged in financial dealings that could not have been commercially motivated.

An earlier Fifth Circuit opinion discussed "insiders" in the context of an equitable subordination action. In *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators)*, 926 F.2d 1458, 1465 (5th Cir. 1991), the Fifth Circuit found that "control is a sufficient basis for insider status; a formal relationship, *e.g.* officer, director or shareholder, may be persuasive but is not a necessary factor." *Fabricators* did not say whether control was *necessary* (as opposed to "sufficient") for a finding of insider status. Another case, *Smith v. Associates Commercial Corporation (Matter of Clark Pipe and Supply Co., Inc.)*, 893 F.2d 693 (5th Cir.1990), discussed what actions a lender could take that would "rise[ ] to the level of unconscionable conduct necessary to justify the application of the doctrine of equitable subordination." *Id.* at 699. Although *Clark Pipe* involved neither § 101(31) nor § 547 of the Bankruptcy Code, it did recognize the fact that, "[t]hrough its loan agreement, every lender effectively exercises 'control' over its borrower to some degree. A lender . . . will usually possess 'control' in the sense that it can foreclose or drastically reduce the debtor's financing." *Id.* at 701. Associates Commercial Corporation had not engaged in inequitable conduct because "the loan agreement . . . gave Associates the right to conduct its affairs with Clark in the manner in which it did." *Id.* at 700–701.

The Fifth Circuit, then, has provided some general guidelines for deciding who "insiders" are in avoidance actions (*Holloway*) but has not decided any such cases involving banks. Meanwhile, *Clark Pipe* clearly voiced the Fifth Circuit's concern

for banks' ability to enforce their loan agreements according to their terms without fear of equitable subordination. While the Fifth Circuit has not directly addressed the issue of whether lender banks should be treated differently from other potential insiders, cases in other jurisdictions are practically unanimous in holding that a "close relationship" alone cannot make a bank an insider of its borrower under § 547(b). Rather, "the key issue is whether the lending institution . . . is in a position to make the decision authorizing the transfer." *Badger Freightways, Inc. v. Continental Illinois National Bank and Trust Company of Chicago (In re Badger Freightways, Inc.)*, 106 B.R. 971, 982 (Bankr.N.D.Ill.1989). "The implication of this premise is that if in the course of bargaining a bank merely exerts leverage in terms of threatening to assert its legal rights, this by itself is not enough to make it an insider." *Id.* The Bankruptcy Code recognizes that "[t]he likelihood of damage to the interests of the debtor's creditors is most acute when the same party-in-interest is on both sides of the transaction resulting in the transfer." *Id.* That danger only exists when the lender exerts actual control over the borrower or when the lender-borrower relationship is "close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties," such as in the *Holloway* case. *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (9th Cir. BAP 1991).

Other cases holding that a lender bank is not an insider unless it actually controls the debtor include *Burner v. Security State Bank (In re Burner)*, 109 B.R. 216, 226–27 (Bankr.W.D.Tex.1989) ("the control element necessary to qualify a bank as an insider must be such that the debtor was the mere alter ego or instrumentality of the bank. . . . As a result, there must be credible evidence presented to demonstrate that the bank held some form of unreasonable control over the debtor"; "the fact that the Debtor and an officer of the Bank have a close personal relationship is an insufficient basis to constitute a finding of

an insider"); *Huizar v. Bank of Robstown (In re Huizar)*, 71 B.R. 826, 831 (Bankr. W.D.Tex.1987) ("a bank's financial power over the debtor does not by itself render the bank an 'insider' for purposes of § 547"); *Schick Oil & Gas, Inc. v. Federal Deposit Insurance Corporation (In re Schick Oil & Gas, Inc.)*, 35 B.R. 282, 285 (Bankr.W.D.Okla.1983) (to show control, a plaintiff must demonstrate some means of restraint or authority greater than the financial power over the debtor that is a normal incident of the debtor-creditor relationship); *Practical Investment Corporation v. Rellen (In re Practical Investment Corporation)*, 95 B.R. 935, 941 (Bankr. E.D.Va.1989) (an insider relationship "involves considerable control or a high likelihood of control on the part of the creditor deemed to be an insider"); *Tidwell v. AmSouth Bank, N.A. (Matter of Cavalier Homes of Georgia, Inc.)*, 102 B.R. 878, 883 (Bankr.M.D.Ga.1989) (bank was not an insider where plaintiffs could not show that the bank exercised managerial control over the debtor, rather than the financial control incident to a creditor-debtor relationship); *Johnson v. NBD Park Ridge Bank (In re Octagon Roofing)*, 124 B.R. 522, 530–31 (Bankr.N.D.Ill.1991) (bank was not an insider where the trustee-plaintiff failed to allege facts demonstrating "operating control"); *Armstrong v. First National Bank (In re Clothes, Inc.)*, 40 B.R. 997, 1000 (D.N.D.1984) (bank was not an insider where it "exercised no control over Clothes, Inc., its manager, or its policies, except for its contract right to require that the notes and security instruments be honored according to their terms."); and *Torcise v. Cunigan (In re Torcise)*, 146 B.R. 303, 306 (Bankr.S.D.Fla.1992).

▮▮▮ This Court concludes that, in the absence of definitive guidance from the Fifth Circuit and under the sound reasoning of *Badger Freightways* and the other case law cited *supra*, a lender bank is not an "insider" for § 547(b) purposes unless it is able to exercise actual managerial con-

trol over the debtor or has some special affinity with the debtor that extends beyond a business relationship. Such control is not indicated merely by financial leverage or the ability to exercise contractual rights; such an affinity is more than the mere existence of a long-term course of business dealings between lender and borrower. The requisite control is, rather, "sufficient authority over the corporate debtor[3] so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Badger Freightways*, 106 B.R. at 982, quoting *Hunter v. Babcock (In re Babcock Dairy Co. of Ohio, Inc.)*, 70 B.R. 657, 661 (Bankr.N.D.Ohio 1986). A special affinity between lender and borrower will be most likely in cases involving individuals, such as *Holloway*. Although the Court can imagine an "affinity" between a bank and a corporate borrower—for example, where the bank's president is the brother-in-law of the debtor's 100% shareholder—no such relationship has been alleged here other than the course of business dealings between the parties. Control over Murchison by Continental Bank is, therefore, the dispositive issue in dealing with the bank's partial summary judgment motion.

*Summary judgment procedure*

The Fifth Circuit has recently summarized the federal procedure for adjudicating summary judgment motions:

Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91

---

**3.** Although Clint Murchison was an individual debtor, he controlled a large network of corporate entities with a distinct managerial hierarchy. In any case, the elements of control or

affinity required to establish insider status apply with equal force in cases of individual and corporate debtors, if none of the statutorily enumerated examples of "insiders" apply.

L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25, 106 S.Ct. at 2553–54. While we must "review the facts drawing all inferences most favorable to the party opposing the motion," *Reid v. State Farm Mut. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

*Federal Deposit Insurance Corporation v. McCrary,* 977 F.2d 192, 194 (5th Cir. 1992).

*The movant's burden*

■ Continental Bank, the movant, offers the deposition of William S. Seiden to show that there is no genuine issue of material fact regarding the question of whether Continental Bank controlled Murchison at the time of the transfers. Seiden stated in his deposition that he was an officer of "probably 50" of the companies Murchison controlled and that his duties "had to do with bank financings and borrowings and mostly treasury-type functions." Seiden was Murchison's principal liaison with Continental Bank.

Seiden testified at his deposition that Continental Bank, in the course of its efforts to collect repayment of its loans to the Murchison companies, "made a lot of suggestions and they would have liked to have influenced us if they could." Many of these "suggestions" were made by Fred Lauerman, Seiden's principal contact at Continental Bank. However, according to Seiden, Lauerman was not "very forceful about anything":

"[W]e [Murchison's agents] never did anything that the bank asked us to do unless it made sense or we agreed with it.... It was our job to run the company, not Continental's.... I don't remember Continental succeeding on anything other than at times perhaps trying to influence us. They obviously wanted to

get paid back at times ... but I don't—it's sort of an easy thing with a bank not to do what they want to do because I know that they are not supposed to tell me what to do. So they couldn't intimidate me, in other words, I don't think."

Seiden testified further that, for "anything of a consequential nature, [Clint Murchison] made the decision."

The Plaintiffs challenge Seiden's testimony as "questionable at best, in view of his long relationship with the bank." The Court finds no evidence, however, that Seiden's long-term association with Murchison necessarily implies any bias in favor of either the Plaintiffs or Continental Bank. The Plaintiffs further point out that, in 1984, Seiden's employment contract provided for a $600,000 "golden parachute" payment in the event of a change in control of United Exposition Service Company ("United Exposition"); Seiden had sent Lauerman a copy of the contract. Continental held United Exposition stock as collateral for various Murchison obligations and could have, by foreclosing on the stock, effected a change in control of the company. The Plaintiffs' implication is apparently that the "golden parachute" arrangement gave Continental Bank special insight into Seiden's motivations and the ability to extract "additional concessions" from Murchison. But whatever Seiden's inclinations were at the time of the transfers—and the Court is by no means convinced that Seiden was inclined to conspire with Continental Bank to manipulate Murchison—the Plaintiffs have adduced no evidence that Seiden was an interested witness at the time of his deposition.

■ The Court finds that Continental Bank has satisfied its initial burden, as a movant which does not have the burden of proof at trial, of identifying discovery on file—the Seiden deposition—which it believes demonstrates the absence of a genuine issue of material fact. *See Federal Deposit Insurance Corporation v. McCrary,* 977 F.2d 192, 194 (5th Cir.1992), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Depositions are appropriate

summary judgment evidence, FED.R.CIV.P. 56(c), and the Plaintiffs' counsel was present at Seiden's deposition. In fact, the testimony cited by Continental Bank was elicited by Plaintiffs' counsel. The Plaintiffs have presented no evidence that Seiden was biased in any way in favor of Continental Bank. Continental Bank has, therefore, shifted the burden to Plaintiffs to set forth specific facts showing the existence of a genuine issue for trial. *See McCrary,* 977 F.2d at 194, citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

*The non-movant's burden*

The Plaintiffs assert that "[t]he knowledge, influence and control exerted by Continental over the business activities of Murchison and his companies far exceeded that of any other lender and/or creditor and enabled Continental to influence Murchison (through Seiden) in a manner that ultimately proved to be very beneficial to Continental and detrimental to the other creditors." Plaintiffs' Response 7. However, Plaintiffs' evidence, even when taken as true and viewed in the light most favorable to Plaintiffs, cannot establish that Continental Bank exercised the type of managerial control required to make Continental Bank an "insider" subject to the extended preference avoidance period of § 547(b)(4)(B).

The Plaintiffs have attached numerous Continental Bank documents to their response to the bank's partial summary judgment motion, including "Watch Loan Reports" detailing the bank's extensive knowledge of Murchison's businesses and its strategy for getting repaid on the Murchison loans. The Plaintiffs point to these documents as proof that Continental Bank knew more about Murchison's assets, and how Murchison's affairs were structured, than any other Murchison lender. Therefore, Plaintiffs argue, Continental Bank was in a better position than other creditors to manipulate Murchison to its own advantage. It is true that insiders typically "have greater access to information about the financial condition of the corporation and are therefore better positioned to anticipate the occurrence of bankruptcy."

*Badger Freightways,* 106 B.R. at 981. However, superior access to information could not have made Continental Bank an insider unless it was also "in a position to make the decision authorizing the transfer." *Id.* at 982.

The Plaintiffs point out that Continental Bank was Murchison's primary lender and, as such, was able to put substantial financial pressure on Murchison. By late 1982 or early 1983, Continental Bank began refusing to extend new credit unless it received "valuable collateral for both the new loan and the pre-existing Murchison Group debt." Additionally, the bank pushed Murchison and his officers to liquidate more and more assets and embarked on a program "to push Murchison towards improved overall control." The Plaintiffs cite numerous examples of Continental Bank's extracting new collateral from Murchison by holding out various financial "carrots" and making judicious decisions about when and whether to call the guarantees of Murchison and his affiliates. Nowhere, however, do the Plaintiffs point to any instance of Continental Bank's actually making managerial decisions for Murchison outside the scope of its rights under its bargained-for loan agreements. In fact, Continental Bank's active maneuvering to negotiate a better position for itself (*i.e.,* more fully secured with more liquid assets) indicates, to this Court's mind, nothing other than arm's-length dealing. *See Toledo Trust Company v. Peoples Banking Company (In re Hartley),* 52 B.R. 679, 690 (Bankr. N.D.Ohio 1985) (bank's requiring borrower to pledge additional collateral does not show an "alter ego" relationship; rather, it shows that the bank dealt at arm's length with the borrower).

The Plaintiffs contend that, during the long-term business relationship between Murchison and Continental Bank, various other incidents showed a lack of arm's-length dealing. First, Continental Bank allowed Topcor Financial, one of Murchison's wholly owned corporations, to borrow large amounts of money to maintain required cash balances for the consolidated Murchison accounts. Second, the bank "lent"

Murchison funds for his use in "buying" a certain loan due to Continental Bank, which Murchison had guaranteed, because Continental Bank wanted to avoid possible litigation resulting from the bank's failure to call upon co-guarantors to satisfy that loan. Third, Murchison was required, under agreements with Continental Bank, to notify Continental Bank before paying off certain other creditors. Fourth, Seiden socialized with Lauerman on a few occasions (although Lauerman testified in his deposition that the relationship between him and Seiden never "evolved into a friendship"). The first three allegations indicate complex lending transactions between Murchison's business entities and Continental Bank, with each party negotiating various benefits from the other party at different points in the business relationship. The Plaintiffs have produced no evidence, however, that any of the Murchison–Continental Bank transactions were dictated by Continental Bank rather than negotiated at arm's length. The facts about Seiden's socializing with Lauerman, even if they indicated a close personal friendship, are simply insufficient to confer insider status on Continental Bank. *See Huizar v. Bank of Robstown (In re Huizar)*, 71 B.R. 826, 832 (Bankr.W.D.Tex.1987) (a personal relationship between a debtor and a bank's president does not mean the bank is an insider for preference recovery purposes; such a conclusion "would result in the unreasonable conclusion that borrowers could only deal with bankers that were not friendly or understanding.").

*Conclusion*

The Court takes as true the overarching theme of the Plaintiffs' briefs, *i.e.*, that Continental Bank was in a superior bargaining position relative to Murchison and enjoyed a close business relationship with Murchison's agents that facilitated some complex dealmaking. Such facts, without more, simply do not indicate the managerial control necessary under the relevant case law to make Continental Bank an insider of Murchison. When pressed, at the hearing on Continental Bank's partial summary judgment motion, to explain how and why Continental Bank influenced Murchi-

son, Plaintiffs' counsel replied that (in addition to the facts considered above) Continental Bank was eventually repaid most of the money it lent to Murchison entities, while no other bank got such favorable treatment. The Court finds that the mere fact that one bank receives proportionately more of its money than other creditors prepetition is irrelevant to the issue of whether the bank was an insider under § 547(b)(4)(B). Disproportionate payment is a wholly separate inquiry under § 547(b)(5).

The Court, therefore, finds that the Plaintiffs have not met their burden of coming forward with evidence tending to show the existence of a genuine issue of material fact regarding whether Continental Bank was an insider of Murchison at the time of the alleged preferential transfers. Continental Bank met its initial burden of identifying the Seiden deposition to demonstrate the absence of a genuine issue of material fact. Continental Bank's motion for partial summary judgment on Count 1 of the Complaint will be granted.